[Civ. No. 53113. First Dist., Div. Two. Feb. 22, 1984.]

LETICIA M. EASTON, Plaintiff and Respondent, v.
WILLIAM F. STRASSBURGER et al.,
Defendants, Cross-defendants and Respondents;
VALLEY OF CALIFORNIA, INC.,
Defendant, Cross-complainant and Appellant;
H. M. BULL et al., Defendants and Respondents.

94

COUNSEL

W. Stephen Wilson, Stephen M. Kass, Stephanie Carol Tramz, Buchman, Kass, Morgan & Miller and Kass, Morgan, Miller & Wilson for Defendant, Cross-complainant and Appellant.

Harry D. Miller, M. Janice Smith and Miller, Starr & Regalia for Plaintiff and Respondent.

No appearance for Defendants, Cross-defendants and Respondents and Defendants and Respondents.

OPINION

KLINE, P. J.—Valley of California, Inc., doing business as Valley Realty (appellant), appeals from a judgment for negligence entered in favor of Leticia M. Easton (respondent). Appellant was one of six defendants in the

action, which was brought by respondent for fraud (including negligent misrepresentation) and negligence in the sale of residential property.

## FACTS

In the case below, all defendants were found liable to respondent for negligence. However, because Valley Realty alone has appealed, we limit our review of the record only to those facts which affect the liability of that party.

Viewing the evidence in the light most favorable to respondent, as we must, the record discloses the following facts: The property which is the subject of this appeal is a one-acre parcel of land located in the City of Diablo. The property is improved with a 3,000-square-foot home, a swimming pool, and a large guest house. Respondent purchased the property for $170,000 from the Strassburgers in May of 1976 and escrow closed in July of that year. Appellant was the listing broker in the transaction.

Shortly after respondent purchased the property, there was massive earth movement on the parcel. Subsequent slides destroyed a portion of the driveway in 1977 or 1978. Expert testimony indicated that the slides occurred because a portion of the property was fill that had not been properly engineered and compacted. The slides caused the foundation of the house to settle which in turn caused cracks in the walls and warped doorways. After the 1976 slide, damage to the property was so severe that although experts appraised the value of the property at $170,000 in an undamaged condition, the value of the damaged property was estimated to be as low as $20,000. Estimates of the cost to repair the damage caused by the slides and avoid recurrence ranged as high as $213,000.

Appellant was represented in the sale of the property by its agents Simkin and Mourning. It is uncontested that these agents conducted several inspections of the property prior to sale. There is also evidence they were aware of certain "red flags" which should have indicated to them that there were soils problems. Despite this, the agents did not request that the soil stability of the property be tested and did not inform respondent that there were potential soils problems.

During the time that the property was owned by the Strassburgers there was a minor slide in 1973 involving about 10 to 12 feet of the filled slope and a major slide in 1975 in which the fill dropped about 8 to 10 feet in a circular shape 50 to 60 feet across. However, the Strassburgers did not tell Simkin or Mourning anything about the slides or the corrective action they had taken.

Respondent purchased the property without being aware of the soils problems or the past history of slides.

In December of 1976 respondent filed suit against appellant, the Strassburgers, and three other named defendants.[1] As against appellant, respondent alleged causes of action for fraudulent concealment, intentional misrepresentation, and negligent misrepresentation.

Appellant filed a cross-complaint against the Strassburgers seeking full indemnity, or, in the alternative, partial indemnity.

The action was tried before a jury. As to appellant, the judge instructed the jury only as to negligent misrepresentation and simple negligence, since the actions for fraudulent concealment and intentional misrepresentation had been voluntarily dismissed. The jury returned a special verdict finding that all named defendants had been negligent, and assessed damages of $197,000. Negligence was apportioned among the parties under the principles of comparative negligence in the following percentages: Appellant—5 percent; Strassburgers—65 percent; George Sauer and San Ramon Builders—15 percent; H.M. Bull—10 percent. The jury also found a nonparty (a cooperating broker) 5 percent responsible.

Appellant contends that the judgment must be reversed or modified for the following reasons: 1) The trial judge incorrectly instructed the jury on a real estate broker's duty to investigate and disclose defects in property; 2) no expert testimony was produced on two key issues in the case: the standard of care applicable to appellant, and appellant's failure to meet this standard of care; 3) the evidence presented at trial was insufficient to establish that appellant was negligent; 4) the jury based its award on the wrong measure of damages; and 5) appellant was improperly denied indemnity against the Strassburgers.

For reasons we shall explain, we find that none of appellant's arguments require reversal of the judgment against it. We agree, however, that appellant was improperly denied indemnification.

DISCUSSION

I.

Appellant's primary contention is that the trial judge committed error by giving the jury an instruction specifying a real estate broker's duty to investigate and disclose defects in property he lists for sale.

---

[1] These three defendants—San Ramon Builders, George Sauer and H.M. Bull—were sued for negligent construction only.

■ In analyzing the validity of this contention, it must be kept in mind that the judgment against appellant was for *simple negligence* only. To establish liability for such negligence, respondent was not required to show that appellant had actual knowledge of the soils problems (as would have been required to prove intentional misrepresentation or fraudulent concealment) or that a misrepresentation had been made as to the soils condition of the property (as is required to establish negligent misrepresentation.) (*Carroll* v. *Gava* (1979) 98 Cal.App.3d 892, 895 [159 Cal.Rptr. 778]; *Huber, Hunt & Nichols, Inc.* v. *Moore* (1977) 67 Cal.App.3d 278, 304 [136 Cal.Rptr. 603].) We are concerned here only with the elements of a simple negligence action; that is, whether appellant owed a legal duty to respondent to use due care, whether this legal duty was breached, and finally whether the breach was a proximate cause of appellant's injury. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; 4 Witkin, Summary of Cal. Law (8th Ed. 1974) Torts, § 488, p. 2749.)

■ Whether a defendant owes a duty of due care to a particular plaintiff is a question of law. (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 822 [131 Cal.Rptr. 854]; 4 Witkin, *supra,* Summary of Cal. Law, Torts, § 493, p. 2756.) ■ ■ ■ ■ Appellant does not contend that it was under *no* duty to exercise due care to prevent injury to respondent.[2] Rather, appellant objects to the manner in which this duty was characterized by the trial court. More particularly, appellant challenges the following instruction: "A real estate broker is a licensed person or entity who holds himself out to the public as having particular skills and knowledge in the real estate field. He is under a duty to disclose facts materially affecting the value or desirability of the property that are known to him or which through reasonable diligence should be known to him."

■ Appellant argues that this instruction elevates a broker's duty beyond the level established by the case law, contending that a broker is only obliged to disclose known facts and has no duty to disclose facts which "should" be known to him "through reasonable diligence." In effect, appellant maintains that a broker has no legal duty to carry out a reasonable investigation of property he undertakes to sell in order to discover defects for the benefit of the buyer. Appellant further argues that since this instruction indicated to the jury that a broker is under such a duty as a matter of law, the giving of the instruction constitutes reversible error.

---

[2]Despite the absence of privity of contract, a real estate agent is clearly under a duty to exercise reasonable care to protect those persons whom the agent is attempting to induce into entering a real estate transaction for the purpose of earning a commission. (*Merrill* v. *Buck* (1962) 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304]; see also, *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 290 [175 Cal.Rptr. 767].)

It is not disputed that current law requires a broker to disclose to a buyer material defects known to the broker but unknown to and unobservable by the buyer. (*Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860, 866 [128 Cal.Rptr. 724]; *Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 733 [29 Cal.Rptr. 201, 8 A.L.R.3d 537]; see also regulations of the Department of Real Estate set forth in Cal. Admin. Code, tit. 10, § 2785, subd. (a)(3).) The *Cooper* case contains the most complete judicial articulation of the rule: "It is the law of this state that where a real estate broker or agent, representing the seller, knows facts materially affecting the value or the desirability of property offered for sale and these facts are known or accessible only to him and his principal, and the broker or agent also knows that these facts are not known to or within the reach of the diligent attention and observation of the buyer, the broker or agent is under a duty to disclose these facts to the buyer. (*Lingsch* v. *Savage* [1963] 213 Cal.App.2d . . .)." (56 Cal.App.3d at p. 866.) If a broker fails to disclose material facts that are known to him he is liable for the intentional tort of "fraudulent concealment" or "negative fraud." (*Warner Const. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 293-294 [85 Cal.Rptr. 444, 466 P.2d 996]; *Cooper* v. *Jevne, supra,* 56 Cal.App.3d at p. 866; *Lingsch* v. *Savage, supra,* 213 Cal.App.2d at p. 735-736.) As noted, however, appellant's liability was here grounded on negligence rather than fraud. The issue, then, is whether a broker is negligent if he fails to disclose defects which he should have discovered through reasonable diligence. Stated another way, we must determine whether the broker's duty of due care in a residential real estate transaction includes a duty to conduct a reasonably competent and diligent inspection of property he has listed for sale in order to discover defects for the benefit of the buyer.

Admittedly, no appellate decision has explicitly declared that a broker is under a duty to disclose material facts which he should have known. We conclude, however, that such a duty is implicit in the rule articulated in *Cooper* and *Lingsch,* which speaks not only to facts known by the broker, but also and independently to facts that are *accessible* only to him and his principal.[3] (*Cooper, supra,* 56 Cal.App.3d at p. 866; *Lingsch, supra,* 213 Cal.App.2d at p. 735, italics added.)

The primary purposes of the *Cooper-Lingsch* rule are to protect the buyer from the unethical broker and seller and to insure that the buyer is provided sufficient accurate information to make an informed decision whether to purchase. These purposes would be seriously undermined if the rule were

---

[3]For reasons we describe presently, where the cause of action is for negligence rather than fraud the undisclosed material facts need not be either actually known by the broker or accessible *only* to him or his principal. (See text, *infra,* at p. 103.)

not seen to include a duty to disclose reasonably discoverable defects. If a broker were required to disclose only known defects, but not also those that are reasonably discoverable, he would be shielded by his ignorance of that which he holds himself out to know. The rule thus narrowly construed would have results inimical to the policy upon which it is based. Such a construction would not only reward the unskilled broker for his own incompetence, but might provide the unscrupulous broker the unilateral ability to protect himself at the expense of the inexperienced and unwary who rely upon him. In any case, if given legal force, the theory that a seller's broker cannot be held accountable for what he does not know but could discover without great difficulty would inevitably produce a disincentive for a seller's broker to make a diligent inspection. Such a disincentive would be most unfortunate, since in residential sales transactions the seller's broker is most frequently the best situated to obtain and provide the most reliable information on the property and is ordinarily counted on to do so.

As one commentator has observed: "Real estate brokers are often in a very commanding position with respect to both sellers and buyers of residential property. The real estate broker's relationship to the buyer is such that the buyer usually expects the broker to protect his interests. This trust and confidence derives from the potential value of the broker's service; houses are infrequently purchased and require a trained eye to determine value and fitness. In addition, financing is often complex. Unlike other commodities, houses are rarely purchased new and there are virtually no remedies for deficiencies in fitness. In some respects the broker-buyer relationship is akin to the attorney-client relationship; the buyer, like the client, relies heavily on another's acquired skill and knowledge, first because of the complexity of the transaction and second because of his own dearth of experience." (Comment, *A Reexamination of the Real Estate Broker-Buyer-Seller Relationship* (1972) 18 Wayne L.Rev. 1343.) Thus, as stated by Judge Cardozo, as he then was, in a different but still relevant context: "The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains. We know from our judicial records that the opportunities have not been lost. . . . He is accredited by his calling in the minds of the inexperienced or the ignorant with a knowledge greater than their own." (*Roman* v. *Lobe* (1926) 243 N.Y. 51, 54-55 [152 N.E. 461, 462-463; 50 A.L.R. 1329, 1332] quoted in *Richards Realty Co.* v. *Real Estate Comr.* (1956) 144 Cal.App.2d 357, 362 [300 P.2d 893]; see also Jacobson, *Broker's Liability for Sale of Defective Homes* (1977) 52 L.A. Bar J. 346, 347, 353 and Note, *Real Estate Brokers' Duties to Prospective Purchasers* (1976) B. Y. U. L.Rev. 513, 514-515.)

Definition of the broker's duty to disclose as necessarily including the responsibility to conduct a reasonable investigation thus seems to us war-

ranted by the pertinent realities. Not only do many buyers in fact *justifiably* believe the seller's broker is also protecting their interest in securing and acting upon accurate information[4] and rely upon him, but the injury occasioned by such reliance, if it be misplaced, may well be substantial. However, the broad definition of the duty we adopt is supported not simply by the magnitude of the benefit thus conferred on buyers but also by the relative ease with which the burden can be sustained by brokers. It seems relevant to us, in this regard, that the duty to disclose *that which should be known* is a formally acknowledged professional obligation that it appears many brokers customarily impose upon themselves as an ethical matter. ■■ ■■ Thus, the Code of Ethics of the National Association of Realtors[5] includes, inter alia, the provision that a broker must not only "avoid . . . concealment of pertinent facts," but "has an affirmative obligation to discover adverse factors that a reasonably competent and diligent investigation would disclose."[6] (National Assn. of Realtors, Interpretations of the Code

---

[4] See Sinclair, *The Duty of the Broker to Purchasers and Prospective Purchasers of Real Property in Illinois* (1981) 69 Ill.Bar J. 260, 263-264, wherein the author states: "In the typical residential real estate transaction, however, the buyer, in particular, may be intentionally or inadvertently led under such circumstances to believe the broker will represent his interest even where he is aware the broker has a listing agreement with the seller. Since the broker's commission is generally paid as a percentage of the sales price, the broker's interest is more closely identified with that of the seller than of the buyer. Where the buyer is unappreciative of the potentially divided loyalty of the broker, he may be lulled into relying on the broker to his significant detriment. Misplaced reliance by the buyer can extend beyond the issue of price to questions regarding quality of title, condition of the premises, and proration of closing costs, property taxes, recording fees, and other expenses."

[5] Pursuant to Evidence Code section 452, subdivision (h), we may take judicial notice of relevant criteria promulgated by a private professional association. (See *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 627 [115 Cal.Rptr. 317]; and *People* v. *Moran* (1974) 39 Cal.App.3d 398, 406, fn. 6 [114 Cal.Rptr. 413].) We do so here for the limited purpose of showing that, with respect to situations similar to that here presented (see *infra*, fn. 6), a significant number of real estate brokers have formally acknowledged the professional responsibility to conduct a reasonable investigation of listed property for the benefit of a buyer with whom the broker is not in privity of contract. We note that, since the code was adverted to in respondent's brief, appellant has been afforded an opportunity to meet such information in its reply brief and at oral argument (Evid. Code, § 459, subd. (d)) even though such an opportunity is not required where, as here, the matter of which judicial notice is taken is not "of substantial consequence to the determination of the action." (*Id.*)

[6] In fact, one of the examples provided by the association to explain the operation of article 9 is analogous to the facts of this case: "Shortly after REALTOR A negotiated the sale of a home to Buyer B a complaint came to the Board charging REALTOR A with failure to disclose a substantial fact concerning the property. The charge was that the house was not connected to the city sanitary sewage system, but had a septic tank, whereas the buyer claimed he had every reason to believe the house was connected with the sewer line. [¶] In a statement to the Board's Grievance Committee, Buyer B agreed that the subject was not discussed during his various conversations with REALTOR A about the house. However, he pointed out that his own independent inquiries had revealed that the street on which the house was located was 'sewered' and he had naturally assumed the house was connected. He had since determined that every other house on the street for several blocks in both directions was connected. He stated that REALTOR A, in not having disclosed the exceptional situation, had failed to disclose a pertinent fact. [¶] REALTOR A's defense in a hearing before the Board's

of Ethics (7th ed. 1978) art. 9.) This implicit duty of all real estate agents, regardless whether they are members of the aforementioned association and bound by its Code of Ethics,[7] is reflected in the law. Thus, for example, in *Brady v. Carman* (1960) 179 Cal.App.2d 63 [3 Cal.Rptr. 612], the court noted that "[t]he defendant . . . is a real estate agent, and as such is supposed to possess ordinary professional knowledge concerning the . . . natural characteristics of the property he is selling . . ., it should have been apparent that the [buyers] were ignorant concerning the nature of an easement and how it could limit their use of the property. . . . [*The broker*] *was obliged as a professional man to obtain information* about the easement *and make a full disclosure* of the burdens it imposed on the land." (*Id.*, at pp. 68-69, italics added.) It is true that *Brady v. Carman* was an action based on fraud, not, as in the present case, negligence; but we do not conceive that the existence of the professional duty to obtain information described in that case may be allowed to vary with the cause of action.

 In sum, we hold that the duty of a real estate broker, representing the seller, to disclose facts, as that fundamental duty is articulated in *Cooper* and *Lingsch,* includes the affirmative duty to conduct a reasonably competent and diligent inspection of the residential[8] property listed for sale and to disclose to prospective purchasers all facts materially affecting the value or desirability of the property that such an investigation would reveal.

---

Professional Standards Committee was (1) that he did not know that this particular house was not connected with the sewer; (2) that in advertising the house he had not represented it as being connected; (3) that at no time, as Buyer B conceded, had he orally stated that the house was connected; that the fact under discussion was not a 'pertinent fact' within the meaning of the Code of Ethics. [¶] The Committee determined that the absence of sewer connection in an area where other houses were connected was a substantial and pertinent fact in the transaction; that the absence of any mention to this fact in advertising or oral representation made it no less pertinent; that ascertaining the failure of previous owners to connect with the available sewer line was within REALTOR A's obligation under Article 9 of the Code; that he was, therefore, in violation of Article 9." (National Assn. of Realtors, *supra,* Interpretations of the Code of Ethics, at p. 74.)

It may be observed that the defect in this example—the lack of a conventional sewage connection—would not in the circumstances described likely be as apparent to a broker as the defect at issue in the case at bar.

[7]It appears that appellant's agents, Simkin and Mourning, who were both members of the Contra Costa County Board of Realtors, were members of the association and subject to the code, since only brokers who are members of the association are entitled to use the copyrighted name "Realtor."

[8]We express no opinion here whether a broker's obligation to conduct an inspection for defects for the benefit of the buyer applies to the sale of commercial real estate. Unlike the residential home buyer who is often unrepresented by a broker, or is effectively unrepresented because of the problems of dual agency (see generally, 1 Miller & Starr, Current Law of Cal. Real Estate (1983 supp.) § 4.18, pp. 25-29; Comment, *Dual Agency in Residential Real Estate Brokerage: Conflict of Interest and Interests in Conflict* (1982) 12 Golden Gate L.Rev. 379), a purchaser of commercial real estate is likely to be more experienced and sophisticated in his dealings in real estate and is usually represented by an agent who represents only the buyer's interests. (Comment, *supra,* 12 Golden Gate L.Rev. at p. 383.)

With respect to the application of this holding, it is vitally important to keep in mind that in *Cooper* and *Lingsch* the basis of liability was fraud, not negligence. The fundamental duty to disclose set forth in those and other real estate fraud cases has application only where it is alleged that the broker either had actual knowledge of the material facts in issue or that such facts were "accessible *only* to him and his principal" (*Cooper, supra,* 56 Cal.App.3d at p. 866; *Lingsch, supra,* 213 Cal.App.2d at p. 735, italics added), so that the broker may constructively be deemed to have had actual knowledge. The implicit duty to investigate is not considered in those cases simply because it is superfluous to the issue of fraud. However, in cases where, as here, the cause of action is for negligence, not fraud, it need not be alleged or proved that the broker had actual knowledge of the material facts in issue nor that such facts were accessible *only* to him or his principal and that he therefore had constructive knowledge thereof.

The real estate fraud cases also require that the undisclosed material facts be such as "are not known to or within the reach of the diligent attention and observation of the buyer." (*Cooper, supra,* 56 Cal.App.3d, p. 866; *Lingsch, supra,* 213 Cal.App.2d, p. 735.) We decline to place a similar limitation on the duty to investigate here articulated. Such a limitation might, first of all, diminish the broker's incentive to conduct the reasonably competent and diligent inspection which the law seeks to encourage. Furthermore, general principles of comparative negligence provide adequate protection to a broker who neglects to explicitly disclose *manifest* defects. (See generally, *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) The duty of the seller's broker to diligently investigate and disclose reasonably discoverable defects to the buyer does not relieve the latter of the duty to exercise reasonable care to protect himself. Cases will undoubtedly arise in which the defect in the property is so clearly apparent that as a matter of law a broker would not be negligent for failure to expressly disclose it, as he could reasonably expect that the buyer's own inspection of the premises would reveal the flaw. In such a case the buyer's negligence *alone* would be the proximate cause of any injury he suffered.

Accordingly, we find that the instruction at issue in this case was legally correct, for, as the trial judge stated to the jury, a seller's broker in a residential real estate transaction *is* "under a duty to disclose facts materially affecting the value or desirability of the property . . . which through reasonable diligence should be known to him."

Appellant also argues that the instruction was improper because the sentence therein just quoted was immediately preceded by the definition of a broker as a "licensed person or entity who holds himself out to the public

as having particular skills and knowledge in the real estate field." Appellant maintains that the proximity of these two sentences led the jury to believe that the duty to disclose is imposed by the license. We disagree. The proximity of the two sentences does not of itself suggest that the duty described in the second sentence arises *because* of the licensing law. There is no connecting language which logically identifies the license referred to in the first sentence as the source of the duty described in the second. The instruction merely sets forth two accurate and independent statements. In any event, since we have held that the duty was correctly defined, a misapprehension by the jury as to its source, if there were any misapprehension, would not have been prejudicial.

The challenged instruction was not erroneous in any respect.

## II.

■ Appellant next contends that the judgment must be reversed because the verdict was not supported by substantial evidence. Again, we cannot agree. The evidence indicates that appellant's agents *had* conducted a limited investigation of the property and that they were aware of "red flags" indicating erosion or settlement problems. There was evidence indicating that one or both of the agents knew that the residence was built on fill and that settlement and erosion problems are commonly associated with such soil. It was additionally established that the agents had seen netting on a slope of the property which had been placed there to repair the slide which occurred most recently prior to the sale. Furthermore, one of the agents testified that he had observed that the floor of a guest house on the property was not level, while the other agent testified that uneven floors were "red flag" indications of soils problems. Although the foregoing does not exhaust the evidence in the record that appellant's agents were on notice of potential soils problems, it is sufficient to establish that there was substantial evidence on the point. Other evidence also established that, despite this notice, the agents did not request that a soils report be prepared, nor take any other significant steps to determine whether there had been slides or other soils problems.

While the evidence did not establish that appellant's agents had actual knowledge of the history of slides and soil problems on the property, such actual knowledge was, as we have said, unnecessary to establish liability for negligence. The jury merely had to conclude—as apparently it did—that a reasonably competent and diligent inspection of the property *would* have uncovered the past history of soils problems. ■ Real estate agents hold themselves out to the public as professionals, and, as such, are required to make reasonable use of their superior knowledge, skills and experience

within the area of their expertise. (4 Witkin, *supra,* Summary of Cal. Law, § 518, p. 2783.) Because such agents are expected to make use of their superior knowledge and skills, which is the reason they are engaged, and because the agents in this case were or should have been alert to the signs of soils problems earlier described, the jury was well within the bounds of reason when it concluded that a reasonably diligent and competent inspection of the property would have included something more than a casual visual inspection and a general inquiry of the owners.

The judgment for negligence against appellant was amply supported by the evidence.

## III.

 Appellant next argues that the judgment must be reversed because no expert testimony was received on two critical issues: the standard of care applicable to appellant, and appellant's failure to meet this standard. The contention is without merit.

We note first that none of the pertinent cases involving allegations of negligence against a real estate broker require expert testimony to establish the standard of care in the real estate industry, or the particular broker's breach of that standard of care. (*Merrill* v. *Buck, supra,* 58 Cal.2d 552; *Earp* v. *Nobmann, supra,* 122 Cal.App.3d 270; *Schoenberg* v. *Romike Properties* (1967) 251 Cal.App.2d 154 [59 Cal.Rptr. 359]; *Wilson* v. *Hisey* (1957) 147 Cal.App.2d 433 [305 P.2d 686].) The only case that has expressly addressed the need for expert testimony in negligence actions against real estate brokers is *Jorgensen* v. *Beach 'n' Bay Realty, Inc.* (1981) 125 Cal.App.3d 155 [177 Cal.Rptr. 882]. In *Jorgensen* the Court of Appeal reversed a judgment of nonsuit in an action against a broker for negligence and other causes of action. The trial court had ruled that the plaintiff could not establish negligence except through expert testimony. The Court of Appeal disagreed and held that under the circumstances of the case expert testimony was not required to establish negligence. The court found that two distinct types of negligence had been alleged: violation of a statutory duty of honesty and fair dealing, and failure to exercise reasonable care in setting the sale price of the plaintiff's property. As to the first type of negligence, the *Jorgensen* court reasoned that expert testimony was not required since "honesty and fair dealing [are not] beyond the realm of 'common knowledge' of lay jurors . . . ." (*Jorgensen, supra,* 125 Cal.App.3d at p. 163.)

As to the second type of negligence (failure to exercise reasonable care in setting price) the court opined that it was "more technical in nature" and

that "[a]rguably, the standard in the industry for determining sale price would require expert testimony to establish." (*Jorgensen, supra,* 125 Cal.App.3d at p. 164.) However, the court then went on to find that, to the extent expert testimony was required, it was supplied by the testimony of defendant *Beach 'n' Bay's* own agents, who had testified regarding the normal practice in the industry for setting price. (*Id.,* at pp. 164-165.)

Although the facts of the instant case present a somewhat closer question than that faced in *Jorgensen,* we find that expert testimony was not required to establish the standard of care in the industry or appellant's breach of that standard. ▆▆▆ As the *Jorgensen* court so aptly put it: "The correct rule on the necessity of expert testimony has been summarized by Bob Dylan: 'You don't need a weatherman to know which way the wind blows.' The California courts, although in harmony, express the rule somewhat less colorfully and hold expert testimony is not required where a question is 'resolvable by common knowledge.' (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 236 [104 Cal.Rptr. 505, 502 P.2d 1]; see also *Mavroudis* v. *Superior Court* (1980) 102 Cal.App.3d 594, 605 [162 Cal.Rptr. 724].)" (*Jorgensen, supra,* 125 Cal.App.3d at p. 163, fn. omitted.) This notion has been most fully developed in the medical malpractice cases. (See Prosser, Torts (4th ed. 1971) § 32, p. 162-165.) ▆▆▆ In medical malpractice actions "cases which depend upon knowledge of the scientific effect of medicine, or the result of surgery, must ordinarily be established by expert testimony of physicians and surgeons. [Citation.] This rule, however, applies only to such facts as are peculiarly within the knowledge of such professional experts and not to facts which may be ascertained by the ordinary use of the senses of a nonexpert." (*Barham* v. *Widing* (1930) 210 Cal. 206, 214 [291 P. 173].)

▆▆▆ Adopting this rationale, we cannot say that the issue of negligence in this case turns on facts "peculiarly within the knowledge of . . . professional experts"; rather, we believe that the jury could have found appellant negligent based on "facts which may be ascertained by the ordinary use of the senses of a nonexpert."

As we earlier found, there was ample evidence appellant's agents were aware of the fill on the property and that erosion and settlement problems are frequently associated with such soil. The evidence also showed the agents were alert to such indications of soil problems as an uneven floor and the use of netting to repair an earlier slide. It does not require an expert to explain to the jury the relationship between uneven floors and the possibility of unstable soil, or the relationship between past slide activity and the likelihood or possibility of future slide activity. It may be noted, finally, that even if expert testimony were required in this case to establish the

appropriate standard of care or the breach thereof, such testimony was supplied by appellant's own agents.[9] (*Jorgensen, supra,* 125 Cal.App.3d at pp. 164-165.)

*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689 [106 Cal.Rptr. 1, 505 P.2d 193], which is relied upon by appellant, does not compel a contrary conclusion. ▆ In *Miller* the Supreme Court stated: "If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case." (*Id.,* at p. 702, italics in original.) ▆ As discussed above, the matter in issue in this case is *not* one within the knowledge of experts *only.*

The court did not err by failing to require "expert testimony" on the issue of negligence.

## IV.

▆ Appellant also argues that the jury used the wrong measure in awarding damages. The trial court instructed the jury that the damages awarded should equal the amount "which will compensate plaintiff for all the detriment proximately caused [by appellant's negligence], whether it could have been anticipated or not." (Civ. Code, § 3333.) Appellant contends that the jury should have awarded damages based on the measure of damages prescribed by Civil Code section 3343; that is, "[t]he difference, if any, between the actual value of that with which the plaintiffs parted and the actual value of that which they received."

We decline to address this question since we find appellant failed to make this objection below. ▆ "It is well established that where a case is tried, without objection on the part of the defendant, on the theory that a certain rule for the measure of damages is correct, the defendant cannot urge for the first time on appeal that the case was tried on an erroneous theory as to damages. [Citations.]" (*Evans* v. *Faught* (1965) 231 Cal.App.2d 698, 713 [42 Cal.Rptr. 133].) ▆ Asserting, in effect, that it should be constructively considered to have timely objected, appellant relies upon a jury instruction requested by *another* defendant that was rejected by the trial court. This instruction stated: "The total amount of plaintiff's damages shall include: [¶] That sum which represents the difference

---

[9]For example, when asked whether it was his custom and practice to inquire about "settlement problems" when aware that a house is built on uncompacted fill, agent Mourning responded "yes", adding later that "if we know the house or assume or can look where the house to be on fill [*sic*], we look for problems."

between fair market value of the property before the injury and fair market value of the property after the injury."

In light of the circumstances, this does not constitute a sufficient objection to the theory of damages developed at trial and presented to the jury. First of all, as noted, this instruction was not proffered by appellant but by another defendant, and appellant is not vicariously entitled to any benefit that the party whose instruction was refused might now claim. Secondly, the instruction offered by the other defendant does *not* express the formula appellant now advances; that is, the difference between the actual value of that which respondent received and that with which she parted. Third, although appellant made a motion for new trial and attacked the damages as being the result of passion or prejudice and not supported by the evidence, appellant did not in so doing contend that the measure of damages upon which the jury was instructed was improper. (See, *Sholar* v. *Barker* (1962) 211 Cal.App.2d 31, 32-33 [27 Cal.Rptr. 451].) Finally, in determining that damages should be based on the cost of repair, respondent and the trial court apparently relied, at least in part, on appellant's acquiesence in the use of this measure. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal § 284, p. 4272.) Appellant did not object to the evidence offered by respondent regarding the cost of repair, and in fact offered its own evidence on this cost item. In light of these factors, and in the absence of any specific objection below by appellant to utilization of the cost of repair as the proper measure of damages, it would be unfair to allow appellant to raise this issue for the first time on appeal.

Finally with respect to damages, appellant argues that, as applied in the circumstances of this case, the rule of joint and several liability in comparative negligence cases is unfair and suggests that it must here be abrogated. Our Supreme Court has, however, authorized joint and several liability in comparative negligence cases such as this (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]), and it is not our office to abandon that authority or place limits upon its application.

In sum, we decline to assign error to the manner in which damages were fixed by the jury pursuant to the instructions of the court.

## V.

Appellant's contention that certain procedural improprieties deprived it of a fair trial may be quickly disposed of. The first asserted impropriety is that a pretrial order permitting respondent to allege a cause of action against appellant for breach of fiduciary duty was filed after trial began, in violation

of rule 219(a) of the California Rules of Court. ■■■ The late filing of this order was certainly not prejudicial, however, because the issues of whether appellant had a fiduciary duty to respondent and, if so, whether that duty was breached never went to the jury. Moreover, appellant never objected at trial and, having failed to do so, cannot raise the issue for the first time on appeal. (*Schramko* v. *Montgomery Ward & Co.* (1963) 223 Cal.App.2d 771, 776-777 [36 Cal.Rptr. 136].)

■■■ Appellant also complains that the trial court improperly allowed the issue of appellant's negligence to go to the jury even though this issue had never been properly pleaded or allowed as an amendment to conform to proof. This contention is unavailing even assuming the cause of action for simple negligence was not as a technical matter properly pleaded. The record is replete with evidence that appellant was at all material times fully apprised that the question of its negligence was placed in issue. The facts set forth in the complaint effectively made a case for negligence and appellant raised the affirmative defense, among others, of contributory negligence. In a pretrial statement appellant alleged that it was not aware "nor should it reasonably have been aware" of prior soils problems on the property, that the manner in which it listed the property "conformed to the highest standards of professional conduct then prevailing," and that it had made a reasonable investigation of the premises. Appellant concluded this pretrial statement by asserting "[t]hat the vast weight of the evidence indicates that there was no negligence on the part of [appellant], and even if such existed, that the comparative negligence of [respondent's] own agent . . . must be charged against [respondent]." Appellant also filed a cross-complaint for indemnity that contemplated a potential judgment against it on a negligence theory. When at the commencement of trial respondent submitted instructions on the issue of negligence appellant did not object and offered certain other instructions on the identical theory. At trial both parties adduced evidence germane only to the issue of simple negligence. Finally, at no time during the proceedings below did appellant even remotely indicate any objection to the presentation of this issue to the jury. For this reason, and because in any event there was no prejudice, appellant cannot do so now. (See Code Civ. Proc., § 475.).

## VI.

■■■ Finally, appellant appeals from the portion of the judgment which denied it a right of indemnity against the sellers of the house, the Strassburgers. Appellant had filed a cross-complaint against the Strassburgers seeking full indemnity, or, in the alternative, partial indemnity based on comparative liability. The issue of indemnity went to the jury. In his instructions to the jury, the trial judge indicated that a person seeking indemnity

could not recover if his negligence was "active" as opposed to "passive." The jury explicitly found that appellant's negligence was "active," thus implicitly finding against appellant on the indemnity issue. Appellant argues that as a result of *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, the "active/passive" distinction is no longer tenable, and, in any case, the evidence clearly showed that appellant's negligence was passive.

Before reaching the merits of this argument we must preliminarily address a related procedural matter. Although the trial judge entered judgment in favor of respondents as against all defendants, the judge failed to enter judgment on appellant's cross-complaint for indemnification. Since the judgment failed to address the cross-complaint it is not an appealable final judgment. (*Tsarnas* v. *Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629].) We are constrained to note, however, that the special verdict of the jury and the rule of law expressed by the judge regarding the effect of a finding of "active" negligence leads inescapably to the conclusion that the judgment would have denied recovery to appellant had it been properly rendered on appellant's cross-complaint.

There is salutary authority for a solution to this dilemma. In the interests of justice and judicial economy, a number of appellate courts have amended judgments which were technically defective so as to render them final and appealable. (*Tsarnas* v. *Bailey, supra,* 179 Cal.App.2d at p. 337; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933], overruled on other grounds *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 900 [157 Cal.Rptr. 693, 598 P.2d 854]; *National Indemnity Co.* v. *Demanes* (1978) 86 Cal.App.3d 155, 161 [150 Cal.Rptr. 117]; 6 Witkin, *supra,* Cal. Procedure, §§ 49-51, pp. 4064-4066.) The *Tsarnas* case is particularly relevant since it dealt with a judgment which failed to address a related cross-complaint. The court ordered judgment entered on the cross-complaint in favor of the cross-defendants since (among other reasons) the circumstances of the case clearly indicated that judgment would have been entered in their favor had the trial judge not failed to do so. (*Tsarnas* v. *Bailey, supra,* 179 Cal.App.2d at p. 337.) Similarly, it is clear under the circumstances of the present case that if the judge had not neglected to enter judgment on the cross-complaint, he would have done so in favor of the Strassburgers as cross-defendants. As in *Tsarnas,* we order judgment entered on appellant's cross-complaint in favor of the Strassburgers as cross-defendants and against appellant as cross-complainant.

Turning to the substance of the argument, we agree with appellant that the trial judge erred in instructing the jury that a person seeking indemnity cannot recover if his negligence is active as distinguished from passive.

Because of this, the judgment we have ordered entered in this case on appellant's cross-complaint must be reversed.

In *American Motorcycle* our Supreme Court distinguished between two types of indemnity. The first was the form of equitable indemnity existing before *American Motorcycle*. This form of indemnity provided for *full* indemnification between concurrent tortfeasors where "the relative culpability of the parties [was] sufficiently disparate to warrant placing the entire loss on one party and completely absolving the other." (*American Motorcycle, supra,* 20 Cal.3d at p. 594.) Prior to *American Motorcycle,* the courts struggled to find some linguistic formula that would provide an appropriate test to determine when this form of equitable indemnity was appropriate. Some authorities required that the negligence of the indemnitor be "active," "primary," or "positive," while the negligence of the indemnitee be found "passive," "secondary," or "negative." (*Id.*) As the Supreme Court noted, the attempt to create such a precise formula was a futile exercise. (*Ibid.*)

The second type of equitable indemnity was that created by the court in *American Motorcycle.* This form of indemnity "modified" the equitable indemnity doctrine just discussed to permit partial indemnity among concurrent tortfeasors on a comparative fault basis. (*American Motorcycle, supra,* 20 Cal.3d at p. 598.) Although the active-passive distinction may still have some validity where a party is seeking *full* indemnity on the basis of the equitable indemnity doctrine as it existed prior to *American Motorcycle* (see *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 375-376 [187 Cal.Rptr. 879]), this distinction is manifestly inapplicable where a party is seeking partial indemnification on a comparative fault basis. (See *Kohn* v. *Superior Court* (1983) 142 Cal.App.3d 323, 329-330 [191 Cal.Rptr. 78]; *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 284 [188 Cal.Rptr. 580]; and *City of Sacramento* v. *Gemsch Investment Co.* (1981) 115 Cal.App.3d 869, 875-877 [171 Cal.Rptr. 764].) As the court in *City of Sacramento* v. *Gemsch, supra,* stated with respect to an attempt in that case to draw distinctions between "active" and "passive" negligence: "Substantively, there is no reason to make such distinctions. Whatever the nature of the relative faults, whatever the quantum, it is measurable under *AMA.*" (115 Cal.App.3d at p. 876.) We concur. Considering that appellant's cross-complaint against the Strassburgers sought partial indemnity based on comparative liability (as well as full indemnity), it was error for the judge to instruct without qualification that a party seeking indemnity cannot recover if his negligence is deemed to be "active."

Although this error requires reversal of that portion of the judgment we have entered denying recovery to appellant on its cross-complaint against

the Strassburgers, reversal of the *entire* judgment is not required. 
The court in *American Motorcycle* expressly held that the rules of joint and several liability applied even where judgments against joint tortfeasors were entered on a comparative fault basis. (*American Motorcycle, supra,* 20 Cal.3d at p. 582.) In reaching this decision, the court stated: "When independent negligent actions of a number of tortfeasors are each a proximate cause of a single injury, each tortfeasor is thus personally liable for the damage sustained, and the injured person may sue one or all of the tortfeasors to obtain a recovery for his injuries; the fact that one of the tortfeasors is impecunious or otherwise immune from suit does not relieve another tortfeasor of his liability for damage which he himself has proximately caused." (*Id.,* at p. 587.) In a like manner, the fact that a judgment improperly denied a defendant a right to partial indemnity vis-à-vis another defendant does not alter a judgment entered in favor of the plaintiff.

The portion of the judgment denying appellant a right to partial indemnity as against the Strassburger cross-defendants is reversed, and the cause remanded to the trial court with instructions to enter judgment in favor of appellant on this issue consistent with the views expressed in this opinion and the law of partial indemnity as developed in *American Motorcycle* and its progeny. In all other respects the judgment is affirmed.[10]

Miller, J., and Smith, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 31, 1984. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.

---

[10]The appeal was also from a denial of motions for judgment n.o.v., for new trial, and to vacate judgment and enter different judgment. The order denying these motions is also affirmed.