[No. D017105. Fourth Dist., Div. One. June 28, 1995.]

BRUCE A. LOKEN, Plaintiff and Respondent, v.
CENTURY 21-AWARD PROPERTIES et al., Defendants and Appellants.

COUNSEL

Royce, Grimm, Vranjes, McCormick & Graham, Jeffrey Y. Greer and Leslie H. Roe for Defendants and Appellants.

Seymour J. Rose for Plaintiff and Respondent.

OPINION

**HALLER, J.**—This appeal stems from the purchase of a single family residence by Bruce A. Loken in 1987. After discovering a crack in the

cement slab of the building in 1990, Loken brought this action against various individuals and real estate brokerages involved in the sales transaction, including the seller's real estate brokerage and agent, Century 21-Award Properties and Jim E. Carmichael. The trial court, sitting without a jury, found Century 21-Award Properties and Carmichael liable for negligent misrepresentation and per se violation of Civil Code[1] section 1102.2; the remaining defendants were found liable on these and other theories. The trial court found all defendants jointly and severally liable to Loken for damages of $78,500. The trial court also ruled all defendants jointly and severally liable for Loken's attorney fees of $52,040; as to Century 21-Award Properties and Carmichael, liability for Loken's attorney fees was premised on the "Tort of Another" doctrine. The trial court ruled neither Century 21-Award Properties and Carmichael nor any other defendant could recover on cross-complaints for indemnity.

Century 21-Award Properties and Carmichael (collectively, Appellants) appeal. Appellants' main contentions are (1) the negligent misrepresentation cause of action was time barred and was not supported by substantial evidence, and (2) the trial court, which had granted a nonsuit on the per se violation of section 1102, erred in reversing itself on this point at the end of trial.

We reverse, finding the negligent misrepresentation and per se violation of section 1102 causes of action were time barred.

### FACTS

On October 18, 1987, Loken viewed the exterior of the single-family residence for sale at 2080 Noble Street in Lemon Grove; at this viewing, Loken's real estate agent, Kenneth Harring, assured him that the patched cracks on the outside walls were normal for stucco. On the same day, Loken made a written offer to purchase the residence for $109,000. Loken accompanied Harring and his wife, Rosemarie, also a real estate agent, as they delivered the written offer to the seller's agent, Carmichael, in the parking lot of the Century 21-Award office. Kenneth Harring introduced Loken to Carmichael and told Carmichael that Loken was concerned that any residence he purchase be structurally sound and not have a defective slab. Carmichael, citing his viewing of the property and a contractor's building inspection report, responded that there were no problems with the house and that it appeared to be in a very structurally sound condition. Loken testified he relied on these representations by Carmichael.

---

[1] All statutory references are to the Civil Code unless otherwise specified.

On October 19, 1987, Susan Virden, the owner of the residence, counter-offered, and Loken accepted. The counteroffer was that Loken's $1,500 good faith deposit be released to her at the start of escrow.

On October 20, 1987, Loken, who was enlisted in the Navy and assigned to a submarine, left for a one-week sea operation. On October 30, 1987, while in San Diego, Loken received a copy of Virden's disclosure statement, in which she stated she was aware of only one significant defect, namely cracks in the cement driveway. Among other things, the disclosure statement included Carmichael's signature verifying he had made "a reasonably competent and diligent visual inspection of the accessible areas of the property" and had not found any other defects.

Loken was away from San Diego intermittently on sea operations until December 4, 1987. Escrow closed on December 7, 1987. Before the close of escrow, Loken was never afforded a walk-through inspection of the house although the sales contract provided he was to have one "within 5 days of escrow." However, on December 5, 1987, Loken did visit the property at the invitation of Virden after telephoning her.

After Loken returned to San Diego on December 4, he and the Harrings reviewed Virden's disclosure statement. The disclosure statement referenced an "inspection report provided by general contractor." On December 6, 1987, the Harrings showed Loken an inspection report of Virden's property that was prepared by Gerald Kwiat of Quality Inspection Service. A cover letter to the inspection report stated "[t]his house was found to be structurally sound and showing no apparent signs of displacement."

Loken moved into the residence on December 7, 1987, and resided there with roommates until July 6, 1988. After a dispute with a roommate, Loken moved out on July 6, 1988, sealed up the windows with plywood and locked the doors. The residence remained sealed and locked up until January 1989, when Loken moved back. During the time that Loken lived in the Noble Street residence, he spent virtually all his time on the ground level and upper floor, seldom visiting the floor that was below ground level and that had the cracked slab.

In late January 1990, Loken discovered major cracking in the stucco. On February 1, 1990, after lifting the wall-to-wall carpeting in a room on the lower level, Loken discovered a major crack in the cement slab of the house; carpet glue was in the crack. It was determined the crack in the slab occurred before the last placement of carpeting because carpet glue lines were visible on the padding below the carpeting.

On March 28, 1990, Loken filed this lawsuit.

Carmichael denied making any representations about the house in Loken's presence. Carmichael testified when he received the listing he performed an inspection of the property. Carmichael looked at the foundation while measuring the house on the exterior and did not recall seeing any cracks. This was the only inspection of the exterior of the residence performed by Carmichael, who also conducted two 4-hour open houses there. Carmichael was aware of the fact the inspection report was prepared by a friend of the seller.

The fact finder viewed the property twice during the course of the 1991 trial. In its statement of decision, the trial court noted, among other things, that in addition to a significant crack in the slab in the family room floor, there were numerous cracks in the stucco exterior walls, receding cement steps adjacent to the north wall of the structure, a crack in the concrete under the sliding glass patio door,[2] cracks in the cement foundation of the structure, cracks and warping in the sidewalk surrounding the structure and cracks in the interior walls and ceiling.

## DISCUSSION

### I. *Negligent Misrepresentation*

■ Appellants contend the negligent misrepresentation cause of action against them was time barred. We agree.

As framed by the parties, the issue is whether the statute of limitations for this cause of action is two years as set forth in section 2079.4 for actions stemming from the breach of a real estate broker's duty to prospective purchasers, or three years as set forth in Code of Civil Procedure section 338, subdivision (d), for actions sounding in fraud. Loken argues the three-year statute of limitations of Code of Civil Procedure section 338, subdivision (d), applies because in this state negligent misrepresentation is considered a species of fraud or deceit involving a false assertion. (See *Wilson* v. *Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306 [18 Cal.Rptr.2d 779]; see also *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487-489 [275 P.2d 15]; §§ 1710, subd. 2, 1572, subd. 2.)

Loken stated his fourth cause of action for negligent misrepresentation against all defendants, including Appellants. It alleged in pertinent part:

---

[2]There was photographic evidence that at the time of the sale an iron bar was being used to support the patio door.

"34. On or about October 18, 1987, and at all times thereafter, Defendants, and each of them, represented to Plaintiff that SUBJECT PROPERTY was free and clear of any defect . . . . These representations made by Defendants, and each of them, to Plaintiff were in fact false. The true facts are that SUBJECT PROPERTY had huge cracks in its slab floors . . . .

"35. Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, made these representations without reasonable ground for believing that there were no cracks in SUBJECT PROPERTY's slab floors . . . . Defendants, and each of them, knew that they could not accurately make such representations as they made and as are herein alleged. At all times herein relevant Defendants, and each of them, concealed from Plaintiff their lack of information and consequent inability to accurately make those representations.

"36. Defendants, and each of them, had a duty to investigate the truth of their representations before making them to Plaintiff. In not investigating the truth of their representations, they breached a duty to Plaintiff.

"37. Failure to make a complete and truthful disclosure in writing on [disclosure statement] is a violation of California statute and negligence *per se*.

"38. Plaintiff, at the time these misrepresentations were made by Defendants, and each of them, and at the time Plaintiff actually purchased SUBJECT PROPERTY, and for some time thereafter, was ignorant of the falsity of the Defendants', and each of them[], representations and believed them to be true. Had Plaintiff realized that SUBJECT PROPERTY's slab was cracked . . . , Plaintiff would not have purchased SUBJECT PROPERTY. Plaintiff's reliance upon the representations of Defendants, and each of them, was justified because Defendants were owners and inspectors, brokers and real estate agents of SUBJECT PROPERTY and had superior knowledge to that of Plaintiff."

The gravamen of this cause of action against Appellants was that it was unreasonable for Carmichael to represent the residence was structurally sound because Carmichael, who had a duty to inspect the property and disclose defects, should have recognized " 'red flags' " (see *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90, 104 [199 Cal.Rptr. 383, 46 A.L.R.4th 521] (*Easton*)) indicating the structural soundness was suspect when he inspected the property.

A broker's duty to both inspect and disclose was first pronounced in *Easton*. "[T]he duty of a real estate broker, representing the seller, to

disclose facts . . . includes the affirmative duty to conduct a reasonably competent and diligent inspection of the residential property listed for sale and to disclose to prospective purchasers all facts materially affecting the value or desirability of the property that such an investigation would reveal." (152 Cal.App.3d at p. 102, fn. omitted.) *Easton* is codified in section 2079 which requires a real estate broker or salesperson to "conduct a reasonably competent and diligent visual inspection" of the property and "disclose to [a] prospective purchaser all facts materially affecting the value or desirability of the property that such an investigation would reveal . . . ." (§ 2079, subd. (a).)[3]

Given this codification of *Easton* and the concomitant duties imposed upon real estate brokers and salespersons, it becomes clear that, as to Appellants, Loken's fourth cause of action for "negligent misrepresentation" is based on Carmichael's alleged breach of those statutory duties.

Section 2079.4 provides for a two-year statute of limitations for breach of the broker's or salesperson's duty to inspect and disclose under section 2079 and related statutes. Section 2079.4 reads: "In no event shall the time for commencement of legal action for breach of duty imposed by this article exceed two years from the date of possession, which means the date of recordation, the date of close of escrow, or the date of occupancy, whichever occurs first."

Appellants urge us to apply the two-year limitation period of section 2079.4 for the negligent misrepresentation cause of action. Here, where the negligent misrepresentation cause of action arises out of Carmichael's duty to inspect and disclose under section 2079, we deem it appropriate to do so.

Statutory interpretation is a question of law; accordingly, we interpret section 2079.4 de novo. (*Suman* v. *BMW of North America, Inc.* (1994) 23

---

[3]Section 2079 et seq. was enacted in 1985. (Stats. 1985, ch. 223, § 2, pp. 1221-1222.) In its accompanying statement of legislative intent, the Legislature declared: "It is the intent of the Legislature that this act codify and make precise the holding in Easton v. Strassburger (152 Cal.App.3d 90). The Legislature finds that the imprecision of terms in the Easton case and the absence of a comprehensive declaration of duties, standards, and exceptions has caused insurers to modify professional liability coverage of real estate licensees and has caused confusion among real estate licensees as to the manner of performing the duty ascribed to them by the court, and that it is necessary to resolve and make precise these issues in an expeditious manner. The Legislature finds that it is desirable to facilitate the issuance of professional liability insurance as a resource for aggrieved members of the public, and declares that the provisions of this act are, and shall be interpreted as, a definition of the duty of care found to exist by Easton v. Strassburger, and the manner of its discharge." (Stats. 1985, ch. 223, § 4, pp. 1222-1223.)

Cal.App.4th 1, 9 [28 Cal.Rptr.2d 133].) The fundamental rules of statutory construction are well settled: "First, 'the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] Secondly, the provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity. [Citations.] Significance, if possible, should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, as 'the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citation.] ' "The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." ' [Citations.]" (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 17-18 [194 Cal.Rptr. 722].)

To determine intent, we first look to statutory language, giving effect to the plain meaning of the language. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

In enacting section 2079.4, the Legislature established a two-year limitation period for "legal action[s] for breach of duty imposed by [section 2079]." (§ 2079.4.) Thus, in resolving the issue presented here, it is important to understand the character of the duty defined in section 2079, recited above. Significantly, the statute imposes a two-pronged duty on the broker: first, to conduct a reasonably competent and diligent visual inspection; *and* second, to disclose all material facts such an inspection would reveal.

The dual nature of this duty does not sound exclusively in negligence. While the first prong of the obligation (inspection) embodies traditional negligence concepts, breach of the second prong (disclosure of material facts) encompasses actionable conduct associated with both negligence and negligent misrepresentation. It follows therefore, under a plain meaning construction of section 2079.4, that negligence *and* negligent misrepresentation causes of action fall within the two-year statute of limitations.

Contrary to Loken's argument, the Legislature did not intend to restrict section 2079.4 to negligence actions. Had the Legislature intended to so limit section 2079.4, it easily could have done so in reasonably clear language. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) Instead, it chose not to do so.

The Legislature's intent is further evidenced in the statement of legislative intent. (See fn. 3, *ante.*) One of the explicit motivating factors for the Legislature in enacting this legislation was to facilitate the issuance of professional liability insurance for real estate licensees. (Stats. 1985, ch. 223, § 4, pp. 1222-1223.) Once the *Easton* opinion was issued, the Legislature acted quickly to clarify the law and assure that liability insurers provide coverage for duties defined in section 2079.

Moreover, as part of this legislation, the Legislature enacted Insurance Code section 11589.5, which underscores the intent to promote the availability of liability insurance for real estate licensees. (Stats. 1985, ch. 223, § 3, p. 1222.) Under Insurance Code section 11589.5, insurers that provide malpractice insurance for real estate licensees cannot exclude from coverage liability stemming from the breach of duty arising under section 2079 et seq., but can exclude from coverage liability stemming from "a dishonest, fraudulent, criminal, or malicious act, error, or omission committed by, at the direction of, or with the knowledge of the insured." Thus, in the same legislation, the Legislature acted to ensure coverage for a licensee's liability stemming from their duties under section 2079, but not for fraudulent or criminal acts of the licensee.

We are cognizant, of course, that California law generally views "negligent misrepresentation" as a species of fraud or deceit (see generally, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720 et seq., p. 819 et seq.). In light of this, Loken urges that the three-year statute of limitations set forth in Code of Civil Procedure section 338, subdivision (d), for actions sounding in fraud should be controlling. Here, however, the fact that Loken has labeled his fourth cause of action against Appellants as sounding in negligent misrepresentation is not crucial because the wrongful conduct he alleged against Appellants stemmed from statutory duties imposed upon real estate brokers and salespersons by section 2079.

The Legislature has in plain language enacted a two-year statute of limitations for "legal action[s] for breach of duty imposed by [section 2079]." (§ 2079.4.) In so doing, the Legislature chose to impose a specific statute of limitations for actions derived from the breach of section 2079 duties rather than rely on a general catch-all statute of limitations provision. "It is . . . an established rule of statutory construction that particular provisions will prevail over general provisions." (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33].) Further, "the Legislature is presumed to be aware not only of the general laws which it has enacted . . . , but also of the judicial decisions interpreting those laws . . . ."

(*Maloy* v. *Municipal Court* (1968) 266 Cal.App.2d 414, 418 [72 Cal.Rptr. 207], fn. omitted.)

Thus, where the Legislature has provided for a two-year limitation period for actions stemming from the breach of duty imposed by section 2079, this specific statute prevails over the general statute of limitations of three years for fraud and negligent misrepresentation causes of action of Code of Civil Procedure section 338, subdivision (d). (*Maloy* v. *Municipal Court, supra,* 266 Cal.App.2d at p. 418 ["Where . . . two inconsistent statutes, one general and the other special, cover the same subject matter, the special one, whether or not enacted first, is treated as an exception to the general statute and controls unless an intent to the contrary clearly appears."].)

In sum, where the negligent misrepresentation cause of action is derived from the duty to inspect and disclose under section 2079, there can be no question that it falls within the two-year limitation period of section 2079.4.[4]

## II. *Per Se Violation of Section 1102*

 Appellants mount a two-pronged attack on the judgment against them on Loken's cause of action alleging per se violation of section 1102 et seq.[5] Appellants argue (1) the cause of action was time barred by section 2079.4, and (2) they were prejudiced by the trial court reversing its judgment on the pleadings in this cause of action after the close of evidence. We find both arguments persuasive.

[4]Accordingly, it is unnecessary for us to discuss Appellants' other complaints about the negligent misrepresentation cause of action, namely that there was no substantial evidence to support their liability on this cause of action and they were prejudiced by an initial ruling by the trial court in their favor and a later reversal of this ruling. Whether Appellants were prejudiced by the trial court's reversal at the end of the trial of its judgment on the section 1102 cause of action is another matter, which we shall address in part II, *post.*

[5]Section 1102 et seq. requires certain disclosures be made when residential property is transferred. Section 1102.6 sets forth the "REAL ESTATE TRANSFER DISCLOSURE STATEMENT." A section of the disclosure statement is to be filled out by the seller's agent. This section reads as follows:

"THE UNDERSIGNED, BASED ON THE ABOVE INQUIRY OF THE SELLER(S) AS TO THE CONDITION OF THE PROPERTY AND BASED ON A REASONABLY COMPETENT AND DILIGENT VISUAL INSPECTION OF THE ACCESSIBLE AREAS OF THE PROPERTY IN CONJUNCTION WITH THAT INQUIRY, STATES THE FOLLOWING:

" • Agent notes no items for disclosure.
" • Agent notes the following items:
"_____
"_____
"_____
"_____"

(§ 1102.6.)

On August 6, 1991, the trial court ruled that judgment pursuant to Code of Civil Procedure section 631.8 would be granted in favor of Appellants on Loken's sixth cause of action for per se violation of section 1102. However, the court did not issue a written order of dismissal as required by Code of Civil Procedure section 581, subdivision (d); the record before us includes only an entry in the court's minutes of that day. After the close of evidence and without giving notice, the trial court reversed itself and found Appellants liable on this cause of action.

First, the trial court's reversal of itself was erroneous on substantive grounds. The trial court was legally correct when it granted judgment pursuant to Code of Civil Procedure section 631.8 because the cause of action alleging per se violation of section 1102 was time barred. This cause of action sounded in negligence (see fn. 5, *ante*), and, stemmed from the duty imposed on Carmichael under section 2079. Clearly, therefore, the cause of action was governed by the two-year statute of limitations of section 2079.4.[6]

We also agree with Appellants that they were irrevocably prejudiced. The effect of this judicial change of heart was to deprive Appellants of an opportunity to defend themselves. It was reasonable for Appellants to rely on the court's statement it was granting judgment and therefore conclude it was unnecessary to present any evidence on a cause of action that had been dismissed. Under these circumstances, the court's reversal of itself after the close of evidence was tantamount to a miscarriage of justice. Loken's waiver argument is unpersuasive.

### DISPOSITION

Judgment against Appellants is reversed in its entirety.

Work, Acting P. J., and Froehlich, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 21, 1995.

---

[6]In light of our conclusion that the two-year statute of limitations of section 2079.4 bars this cause of action, as well as the negligent misrepresentation cause of action, Appellants' remaining assignments of error are moot.