[No. B183165. Second Dist., Div. Eight. Nov. 1, 2007.]

CARL MICHEL et al., Plaintiffs and Appellants, v.
MOORE & ASSOCIATES, INC., Defendant and Respondent.

## COUNSEL

Trutanich Michel, Victor J. Otten and Brigid J. Joyce for Plaintiffs and Appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker and Robert Cooper for Defendant and Respondent.

## OPINION

**RUBIN, J.**—Carl and Sydne Michel appeal from the nonsuit of their cause of action for negligent nondisclosure and the associated judgment for the defense after a trial against their real estate broker, Larry Moore & Associates, Inc. We reverse and remand as to the negligent nondisclosure cause of action only; otherwise, we affirm the judgment.

■■■■■■■■■■ ■■■■■

## FACTS AND PROCEDURAL HISTORY

Mike Kirkpatrick was a real estate agent working for respondent Larry Moore & Associates, Inc. (Moore, or respondent), a licensed real estate broker. Sometime around the beginning of 2000, he inspected a home in Rolling Hills Estates owned by a friend's parents. Hoping to become the listing agent if the parents decided to sell their house, he took notes of the property's defects, including possible water leaks, cracked interior walls, and damage to the pool. If he won the listing, he planned to use his notes to identify needed repairs and possible disclosure to potential buyers.

About six months later in June 2000, the house was on the market. Kirkpatrick, who had not received the sellers' listing, showed the house to appellants Carl and Sydne Michel, who were represented by agent Nicola Lagudis, a colleague of Kirkpatrick also working for respondent Moore. During the home tour, Kirkpatrick did not point out any of the defects from his notes. Appellants were under the misimpression that Kirkpatrick represented the sellers. Actually, he was acting as an associate of their agent, Lagudis. In fact, a Fred Sands office had the sellers' listing. Based on that misimpression, appellants gave Kirkpatrick a written offer to buy the house. Several weeks later, after receiving no reply to their misdirected offer to Kirkpatrick, appellants revisited the property and submitted a new offer to the Fred Sands agent.

Appellants and the sellers shortly thereafter agreed on the terms of sale and entered escrow. At the end of July, appellants' agent Lagudis visually inspected the property and gave appellants her obligatory transfer disclosure statement (TDS). Jibing with Kirkpatrick's notes some seven months earlier about cracks in the walls, the TDS noted cracks had been patched and painted. The TDS did not, however, disclose other defects listed in Kirkpatrick's notes. (We discuss the differences between the TDS and Kirkpatrick's notes, which are central to this appeal, later in this opinion.)

One of Kirkpatrick's tasks as respondent's "transaction coordinator" was reviewing the sales files of respondent's agents to ensure a sale's paperwork was in order before escrow closed. Accordingly, Kirkpatrick reviewed Lagudis's TDS to appellants. Although mindful of his notes as he reviewed the TDS, he did not tell Lagudis about them, nor did he augment her TDS with anything from those notes. Appellants thus never knew the contents of Kirkpatrick's notes before escrow closed.

Starting with the first winter rains about a month after appellants moved into their new home, cracks emerged in interior walls, which appellants repeatedly patched. Around that time, appellants started remodeling their

backyard and pool. To do so, they needed a permit, which required a soil engineer to inspect their property. The engineer discovered poor topsoil and fill had caused significant instability and ground movement on the property. He found the movement had tilted the house's foundation about 3.5 inches from level, which in his opinion caused the repeated cracks in the walls. To stabilize the house, he recommended placing caissons under its foundation down to solid bedrock.

Upset by the engineer's report, appellants met with Kirkpatrick in January 2001. They told him about the soil instability and cracks in the walls, which would likely cost about half a million dollars to fix. Kirkpatrick replied he had seen during his inspection before the house was put on the market cracks big enough to slip a coin into.[1] Hearing about his notes for the first time, appellants asked for a copy, which Kirkpatrick gave them.

In September 2002, appellants sued respondent Moore.[2] They alleged causes of action for violation of Civil Code section 2079 for Moore's failure to competently inspect the property.[3] They also alleged a cause of action for fraudulent concealment for the failure of Lagudis's TDS to disclose defects known by respondent. And, finally, they alleged a cause of action for negligent nondisclosure in respondent's not telling appellants about problems respondent knew about the property.

The case went to trial. Before appellants' opening statement, respondent moved for a judgment of nonsuit on appellants' cause of action for negligent nondisclosure. Respondent argued California law required that respondent's negligence involve an affirmative assertion, but negligence in failing to disclose a fact was not actionable. The court granted respondent's motion.[4] Trial proceeded only on appellants' causes of action for violation of Civil Code section 2079 (section 2079) and fraudulent concealment.

---

[1] Kirkpatrick denies having said one could insert a coin into the cracks, but in reviewing the trial court's entry of a nonsuit, we must accept appellants' evidence as true.

[2] They sued other defendants, too, but they are not part of this appeal. Appellants settled for $50,000 with the listing agent, Fred Sands Palos Verdes Realty and its employees. The court dismissed appellants' cause of action for breach of contract against the son of the sellers who signed the sales documents on sellers' behalf. Appellants have not challenged that ruling on appeal. The sellers also filed for protection under the bankruptcy laws.

[3] The complaint originally pleaded a cause of action for violation of Civil Code section 1102 et seq., but appellants amended without objection that cause of action to allege a violation of section 2079.

[4] As the court later noted, it is "irregular" to grant a motion for nonsuit before a plaintiff's opening statement (Code Civ. Proc., § 581c, subd. (a) ["Only after, and not before, the plaintiff has completed his or her opening statement . . . the defendant . . . may move for a judgment of nonsuit."].) It is nevertheless not reversible error to grant such a motion prematurely if the motion is otherwise well taken. (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 114 [40 Cal.Rptr.3d 48].)

The jury returned a verdict for respondent on both causes of action. Rejecting the claim under section 2079, the jury found respondent did not fail to conduct a reasonably competent and diligent visual inspection of the property, and did not fail to disclose to appellants any material fact about the property that an investigation would reveal. Similarly rejecting the claim for fraudulent concealment, the jury found respondent did not conceal or suppress any material fact from appellants. The court entered judgment for respondent. This appeal followed.

## STANDARD OF REVIEW

In reviewing a judgment of nonsuit, we view the evidence in the light most favorable to appellants. We affirm only if we find as a matter of law that appellants could not have prevailed at trial even if the jury had accepted all their evidence as true and resolved all factual conflicts in their favor. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948]; *Curtis v. Santa Clara Valley Medical Center* (2003) 110 Cal.App.4th 796, 800 [2 Cal.Rptr.3d 73].)

## DISCUSSION

Stated in a nutshell, appellants claim respondent is liable for not telling them before they bought their home about Kirkpatrick's walk-through and notes. The trial court let two causes of action go to the jury: a statutory cause of action for violating section 2079, and a common law cause of action for fraudulent concealment. The court instructed the jury that under section 2079 "a real estate broker has a duty to the prospective purchaser of a residential real property to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to a prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal."[5] It further instructed for fraudulent concealment that appellants must show respondent intentionally concealed facts with the intent to defraud them. The court did not, however, permit appellants' cause of action for negligent nondisclosure to go to the jury.

---

[5] The parties' briefs do not discuss whether section 2079 properly applied to respondent. By its terms, section 2079 imposes a duty only from the *listing* broker who is *selling* the property to the buyer; it does not impose a duty on the buyer's own broker. It states in pertinent part, "It is the duty of a real estate broker or salesperson . . . to a prospective purchaser of residential real property . . . to [inspect and disclose as more fully described by the statute] if that broker has a *written contract with the seller* to find or obtain a buyer or is a broker who *acts in cooperation* with that broker to find and obtain a buyer." (§ 2079, subd. (a), italics added; see also *Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 21 [73 Cal.Rptr.2d 784] (*Field*) [§ 2079 obligates seller's broker to conduct reasonable visual inspection for the buyer's protection]; *Loken v. Century 21-Award Properties* (1995) 36 Cal.App.4th 263, 271 [42 Cal.Rptr.2d 683] [§ 2079 obligates *seller's* broker to conduct reasonably competent and

■ The court's dismissal of appellants' cause of action for negligent nondisclosure was error because it involved elements different from appellants' section 2079 and fraudulent concealment causes of action. (*Karoutas v. HomeFed Bank* (1991) 232 Cal.App.3d 767, 771 [283 Cal.Rptr. 809] [recognizing negligent nondisclosure where bank did not disclose soil instability to buyer purchasing property after bank foreclosed on the property].) For those latter two causes of action submitted to the jury, Lagudis may very well have been *competent* in her visual inspection of the property in preparing her TDS for appellants AND Kirkpatrick may very well have had no *fraudulent* intent in not telling appellants about his inspection and notes before escrow closed—circumstances justifying the jury's verdict for respondent on the section 2079 and fraud causes of action—but that does not mean respondent did not injure appellants by not telling them before they bought their house about Kirkpatrick's notes.

■ A broker has a fiduciary duty to its client. (Civ. Code, § 2079.24; *Field, supra*, 63 Cal.App.4th at p. 25 ["a broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty"].) The fiduciary duty is greater than the negligence standard of due care under section 2079. (Civ. Code, § 2079.2 [standard of care is of a "reasonably prudent real estate licensee"].) Thus a broker can be professionally competent under section 2079 without satisfying the greater duty of a trusted fiduciary. As *Field*, explained, "the *fiduciary* duty owed by brokers to their own clients is substantially more extensive than the *nonfiduciary* duty codified in section 2079." (*Field*, at p. 25.)

■ A fiduciary must tell its principal of all information it possesses that is material to the principal's interests. (*L. Byron Culver & Associates v. Jaoudi Industrial & Trading Corp.* (1991) 1 Cal.App.4th 300, 304 [1 Cal.Rptr.2d 680]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 794, p. 1149; 2 Miller & Starr, Cal. Real Estate (3d ed. 2000) §§ 3:25, p. 120, 3:27, p. 149, 4:17, p. 41.) A fiduciary's failure to share material information with the principal is constructive fraud, a term of art obviating actual fraudulent intent. (Civ. Code, § 1573.) As *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399 [98 Cal.Rptr.2d 176], explains: "a real estate agent, as a fiduciary, is . . . ' ". . . liable to his principal for constructive fraud even

diligent visual inspection and disclose to *buyer* facts such an inspection would reveal].) We find nothing in the record of a written agreement or evidence of Fred Sands and respondent acting in cooperation to find a buyer.

Respondent requested the principal instruction the court gave on section 2079 (special instruction No. 5). The typewritten portion tracks the statutory language indicating its application to sellers' brokers, i.e., one who has "a written contract with the seller . . . ." By deleting some of the printed language, adding handwritten portions, and modifying special instruction No. 26 requested by appellants, the parties endeavored without legal success to graft a buyer's broker obligation onto a seller's broker statute.

though his conduct is not actually fraudulent. Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship." [Citation.] [¶] "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud." ' " (*Id.* at p. 415; see *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562 [29 Cal.Rptr.2d 463] [same].) Appellants' negligent nondisclosure/constructive fraud theory relieved them of the burden of needing to prove respondent intended to defraud them, a much easier row to hoe than proving actual intent to defraud for fraudulent concealment.

■ Respondent argues no difference exists between appellants' causes of action for negligent nondisclosure and violation of section 2079 because, in respondent's view, the statute codifies a claim for common law negligence. Hence, respondent concludes, the jury's rejection of appellants' cause of action for violation of section 2079 necessarily decided in respondent's favor the question of respondent's common law negligence. Respondent's conclusion does not follow because it rests on a flawed premise. Section 2079 codifies a negligence standard of care for one particular task that the law imposes on brokers—the obligation (by a seller's agent) to visually inspect the property and disclose the results of that inspection to the buyer. Appellants' cause of action for negligent nondisclosure rests, in contrast, on respondent's fiduciary duty to disclose material information within its possession. It was immaterial how the fiduciary obtained the information; it has a duty to disclose the information to its principal. Appellants' two causes of action were not the same: As *Field, supra,* 63 Cal.App.4th 18, observed, "the *fiduciary* duty owed by brokers to their own clients is substantially more extensive than the *nonfiduciary* duty codified in section 2079." (*Id.* at p. 25.)

Respondent further argues that the trial court instructed the jury that respondent was appellants' fiduciary. Thus, according to respondent, the jury necessarily contemplated those fiduciary duties when it delivered its verdict for respondent. Respondent's assertion is unavailing because it ignores the limited scope of the court's fiduciary instruction. The court told the jury that respondent was appellants' fiduciary as the court defined the elements of fraudulent concealment. In defining those elements, the court did not instruct on constructive fraud's connection to fiduciary relationships. Instead, the court told the jury that appellants needed to prove respondent intentionally

concealed or suppressed information with the intent to defraud. By imposing the tougher evidentiary challenge of proving actual fraudulent intent, the court derailed appellants from the easier evidentiary route to liability through constructive fraud, which does not require actual fraudulent intent. Thus, the court's fiduciary instruction did not provide appellants the legal benefit to which they were entitled.

Finally, respondent contends Lagudis's TDS covered all the property defects listed in Kirkpatrick's notes. Consequently, in respondent's view, the notes added no new information that could have affected appellants' decision to buy the house, thus releasing respondent from any liability for not disclosing the notes. Comparing the TDS to Kirkpatrick's notes shows respondent is mistaken because the notes identify defects the TDS did not list. For example, the notes state "pool needs work—cracks—missing tiles"; the TDS does not mention the pool. The notes record "sliding doors master bath needs adjusting (hard to slide)," but the TDS does not mention the doors or the master bathroom. The notes observe that a front planter was cracked, but the TDS says nothing about it. The notes identify "discoloration under living room doors (leak?)," but the TDS says nothing similar. The notes state "stucco damage around rear door (water)??" but the TDS only noted cracks in the stucco without referring to the door or mentioning water. The notes record "damage around living room window"; the TDS does not mention the window. The notes state "hardwood floors in fam. room separating," whereas the TDS says the floors were merely "uneven." The notes record "discoloration around toilet (1/2 bath)," but the TDS mentions only the stained floor in the bathroom without connecting it to the toilet. Respondent's contention that the notes and TDS were redundant does not pass muster. A jury might reasonably find that if respondent had disclosed the defects from Kirkpatrick's report, the new information, combined with the TDS material, could have alerted appellants to the soil defect that undermined the foundation's stability.

Respondent also argues that the jury's entry of "0" on the verdict form for the amount of appellants' damages shows appellants suffered no injury in not receiving Kirkpatrick's notes. The argument is unpersuasive. The court instructed the jury to calculate appellants' damages if the jurors found in appellants' favor on the section 2079 or fraudulent concealment claims. Having rejected both causes of action, the jury had no reason to calculate damages. Thus, its superfluous entry of "0" in the space marked for damages does not reveal the amount the jury might have awarded if it had reached a verdict in favor of appellants' nonsuited cause of action for negligent nondisclosure.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings only on appellants' cause of action for negligent nondisclosure. In all other respects, the judgment is affirmed. Appellants to recover costs on appeal.

Cooper, P. J., and Flier, J., concurred.