Filed 3/27/26  Selby v. Stangl CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RIKKI SELBY, | B327247 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV08065) |
| v. | |
| GREG STANGL, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed in part and reversed in part.

Brian J. Jacobs for Plaintiff and Appellant.

Gaglione, Dolan, & Kaplan, Robert T. Dolan and Martina A. Silas for Defendant and Respondent.

————————————

In 2017, Plaintiff Rikki Selby purchased a luxury condominium in downtown Los Angeles. She subsequently discovered the property reeked indelibly of cigarette smoke. Selby sued the seller and the seller's broker for failing to sufficiently disclose that the seller had smoked in the unit. The seller and his broker prevailed in arbitration. Selby then sued her broker, defendant Greg Stangl. Selby alleged that Stangl's failure to discover and disclose the smoke odor before she purchased the property breached his fiduciary duty; his conduct and receipt of a brokerage fee constituted financial elder abuse; and she was entitled to the attorney fees she incurred in the arbitration as damages, under the tort of another doctrine. The trial court sustained Stangl's demurrer on the ground that the arbitrator's findings in favor of the seller and his broker collaterally estopped Selby from pursuing her claims against Stangl.

We reverse the trial court's ruling in part. Collateral estoppel did not bar Selby's claims against Stangl. We further determine that Selby's allegations were sufficient to state a cause of action for financial elder abuse. However, we affirm the trial court's order sustaining the demurrer to Selby's cause of action for tort of another, without prejudice to Selby pursuing that theory of damages as a component of her tort claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

***Selby's Purchase of the Property***

The following facts are taken from the operative pleading. In 2017, Selby decided to relocate from Orange County to Los Angeles. Selby was 69 years old and required the use of a wheelchair.

2

On March 26, 2017, Selby went to an open house for a luxury condominium in downtown Los Angeles. Stangl did not accompany her. Selby noticed that a fan was running in the unit and all the windows and sliding doors were open. Selby returned for a second viewing with Stangl. She again noticed the fan. The seller's broker, Alex LiMandri, said the fan was running to remove " 'stale air.' "

On March 27, 2017, Selby entered into an agreement to buy the property from the seller, Gary Conrad, for $949,000. Stangl sent Selby the seller's disclosure documents, including the Seller Property Questionnaire (SPQ). The SPQ serves to inform buyers of " 'known material or significant items affecting the value or desirability of the Property and eliminate misunderstandings about the condition of the Property.' " The SPQ instructs sellers to indicate whether they are aware of specified conditions on the property by checking "Yes" or "No," and to explain any "Yes" answers on the form. In response to whether Conrad was aware of " '[a]ny occupant of the Property smoking on or in the Property,' " Conrad checked "Yes." He did not provide a further explanation. Stangl did not review or discuss the SPQ with Selby.

Stangl completed and signed an Agent Visual Inspection Disclosure (AVID) report as part of the transaction. The AVID report indicated Stangl inspected the property on April 5, 2017. Stangl noted " 'Normal Wear & Tear' " in some of the rooms, but he did not mention any odors. During escrow, Selby executed a " 'Buyer's Inspection Waiver,' " forgoing her right to a certified inspection of the property.

During her first visit to the property after the close of escrow, Selby "was met with a strong and pungent cigarette

smoke odor." She had difficulty breathing when in the unit and twice went to urgent care as a result. She learned that Conrad "was a life-long, heavy smoker, who smoked inside the Property." The smell of cigarette smoke persisted despite multiple cleanings, including a professional cleaning. Testing confirmed there were "large quantities of residual nicotine" in the property. After consulting with professionals, Selby learned that her only option was to demolish the interior. She asked Conrad to rescind the sale. Conrad refused.

***Selby's Action Against Conrad and LiMandri***

In 2018, Selby sued Conrad and his agent LiMandri, asserting causes of action for intentional misrepresentation and negligent misrepresentation against both defendants, fraudulent concealment and breach of common law duty against LiMandri, and breach of contract against Conrad. The parties submitted the matter to arbitration. The arbitration took place over six days in March 2020.[1]

In August 2020, the arbitrator issued a final award in Conrad and LiMandri's favor. The arbitrator found that neither Conrad nor LiMandri was liable for intentional misrepresentation. The arbitrator relied partly on the opinion of Conrad's expert. As the award recounted, the expert had opined that, among other things, "(i) Seller complied with the custom and practice in completing the SPQ, (ii) Seller's failure to add an explanation of the 'Yes' answer regarding prior smoking is not a breach of duty, (iii) Buyer's agent, Mr. Stangl (who is not a party to this litigation) breached his duty of care to Buyer, and

---

[1]     Conrad passed away in 2019. Before the arbitration, the court entered an order substituting the personal representative of his estate and trustees of the family trust in his place.

4

(iv) Buyer did not act reasonably to protect herself, as required by California law.  Specifically, with respect to the 'Yes' answer, [the expert] testified that no further elaboration is required and that the 'Yes' answer was sufficient to alert Buyer of the history of smoking in the Unit and to 'handoff' the burden to her to make further inquiry if she felt that history was a potential problem."

The arbitrator found the expert's conclusion regarding Conrad's SPQ response was "the correct reflection of California law."  Conrad's failure to explain his "Yes" answer to the smoking question in the SPQ was "neither false nor duplicitous; Seller did in fact Smoke in the Unit.  Although further elaboration may have been helpful to [Selby], it was not necessary in order to alert [Selby] of the history of smoking in the residence."  According to the arbitrator, the SPQ provided enough information to enable Selby "to request a detailed explanation or to conduct any further inquiry she felt warranted."

The arbitrator further found that Selby's conduct "fell below the legal standard imposed by" Civil Code section 2079.5,[2] which "makes it clear that a prospective buyer of residential property has a 'duty to exercise reasonable care to protect himself or herself, including those facts which are known to or within the diligent attention and observation of the buyer or prospective buyer.' "  The arbitrator noted that although the disclosure documents informed Selby of this duty, she "did nothing, literally nothing, to protect herself from the very condition she now finds intolerable."  "Buyer (and her agent) failed to request any further elaboration" about Conrad's smoking disclosure in the SPQ; Selby

---

[2]     Further undesignated statutory references are to the Civil Code.

waived the certified home inspection; and she did not perform a final walkthrough.

The arbitrator rejected Selby's claim for negligent misrepresentation and fraudulent concealment on the ground that neither Conrad nor LiMandri made any misrepresentations about the smoking history of the unit, Selby was expressly advised about the history of smoking in the unit, the use of the fan was a reasonable act, and there was no evidence that LiMandri noticed the smoke odor in the unit. As to Selby's cause of action against LiMandri for breach of common law duty, the arbitrator stated that he did "not discern any material difference between this cause of action and the prior causes of action. To the extent there is any material difference, the Arbitrator finds that Broker did not breach any common law duty owed to Buyer." Finally, the arbitrator determined Conrad did not breach the parties' contract.

### Selby's Action Against Stangl

In 2021, Selby sued Stangl for breach of fiduciary duty. The complaint alleged that Stangl failed to advise Selby: that she should ask about the use of the fan during the showings of the unit; that he detected the odor of cigarette smoke during his inspection; that the SPQ smoking disclosure was incomplete; or that Selby should follow up with Conrad about "who smoked inside the Property and how often such persons smoked inside the Property."

In May 2022, Stangl filed a motion for judgment on the pleadings. He contended the arbitrator's finding that Selby failed to protect her own interests precluded her from alleging that Stangl's breach caused her damages. The trial court granted the motion with leave to amend.

6

In August 2022, Selby filed a First Amended Complaint (FAC) against Stangl, asserting causes of action for breach of fiduciary duty, financial elder abuse, and tort of another. The FAC again alleged that Stangl did not review or discuss the SPQ with Selby, adding that Stangl did not "alert Selby to the 'Yes' response [on the SPQ] concerning smoking nor advise her that the extent of Seller's smoking should be investigated." In addition to alleging that Stangl failed to mention odors in his AVID report, the FAC further claimed that, based on information and belief, "Stangl did not in fact inspect the Property, as a result of which he failed to learn of residual smoking odors in the Property." The FAC also alleged: "In view of [the] Seller's failure to explain his 'Yes' answer . . . , Stangl should have insisted to Selby that an independent home inspection should be conducted, but failed to do so."

The FAC asserted four factual bases for the breach of fiduciary duty cause of action. Two were repeated from the initial complaint: that Stangl failed to advise Selby that the SPQ smoking disclosure was incomplete, and he failed to advise her to ask additional questions about the history of smoking in the unit. In addition, the FAC asserted that Stangl breached his fiduciary duty by failing to inspect the property at all and by failing to advise against Selby's waiver of her right to have a certified home inspection. As to the second cause of action for financial elder abuse, the FAC alleged that Stangl "financially abused Selby by taking, secreting, obtaining or retaining title to their brokerage fee for [his] personal use" in violation of Welfare and Institutions Code section 15610.30. Finally, as to the third cause of action for tort of another, the FAC alleged that Selby was entitled to

7

recover from Stangl the attorney fees she incurred in prosecuting the arbitration against Conrad and LiMandri.

In September 2022, Stangl demurred to the FAC. Stangl contended collateral estoppel barred all causes of action in Selby's FAC for the same reasons it had applied to her original complaint. Stangl also alleged that the FAC contained a sham allegation and Selby failed to plead facts sufficient to state a cause of action for financial elder abuse or tort of another.

In October 2022, the trial court sustained Stangl's demurrer without leave to amend.[3] The trial court found the FAC made "no new factual allegations which may support a finding of liability for Defendant." The court concluded that the FAC, like the original complaint, alleged that Selby's lack of information about smoking in the property caused her damages. The court further found the arbitrator's determinations "that Plaintiff did not protect her own interest, that the disclosures of the history of smoking in the Property were sufficient to put Plaintiff on notice, 'that further elaboration regarding smoking would not have made a difference to the outcome, and that Plaintiff's knowing waiver of any inspection rights, and warnings of the possible consequences of her knowing waiver, vitiated her complaint that she had sustained damages caused by any failure to disclose facts pertaining to smoking.' "

Noting that the arbitrator found that Selby "did in fact have sufficient information" about smoking on the property, the

---

[3] The court took judicial notice of Selby's complaint against Conrad and counsel's declaration in support of the petition to confirm the arbitration award in the Conrad action, among other documents. Counsel's declaration in support of the petition to confirm is not part of the record on appeal.

8

trial court concluded the FAC "fail[ed] to explain how the arbitrator's findings regarding no causation on the part of Stangl would allow for findings of new liability here. Plaintiff further seeks to find new liabilities and duties upon Stangl . . . without explaining how the arbitrator's findings regarding the sufficiency of Stangl's actions do not entirely do away with new allegations of liability." The trial court additionally concluded that "as Plaintiff was not the prevailing party in arbitration, Plaintiff's second and third causes of action are precluded by the arbitration." The trial court sustained the demurrer without leave to amend.

In January 2023, the trial court entered an order dismissing the action with prejudice. Selby timely appealed.[4]

---

[4] After the appellate briefing was complete, Selby filed a motion to certify the record on appeal. She contends the trial court failed to comply with the procedures in California Rules of Court, rule 8.137, for reviewing, correcting, and certifying her proposed settled statement. She asks this court to either certify the proposed statement or direct the trial court to do so. We deny the motion. "[M]andamus is the proper and exclusive remedy when a trial judge refuses to settle a statement which it is his duty to settle . . . ." (*Murphy v. Stelling* (1903) 138 Cal. 641, 642–643; *Brode v. Goslin* (1910) 158 Cal. 699, 701; *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 936 [appellant forfeited challenge to denial of settled statement by failing to seek writ review or raise the denial in the opening brief on appeal].) Selby failed to seek writ review or raise her arguments regarding the proposed settled statement in her opening brief. Further, Selby's proposed settled statement purports to summarize oral proceedings that are not necessary to her arguments on appeal or material to our de novo review of the issues.

# DISCUSSION

## I. The Trial Court Erred In Concluding Collateral Estoppel Bars the FAC

### A. Standard of review and legal principles

#### 1. Demurrer

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. [Citation.] We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law. [Citation.] It is error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

"On demurrer a court considers the allegations on the face of the complaint and any matter of which it must or may take judicial notice. (Code Civ. Proc., § 430.30, subd. (a).) If judicially noticed records of prior litigation show the complaint is barred by collateral estoppel, the demurrer may be sustained. [Citations.] On appeal from the judgment of dismissal following the sustaining of the demurrer without leave to amend, we review the order de novo to determine whether as a matter of law the complaint is barred by collateral estoppel." (*Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667.)

## 2. Collateral estoppel

Collateral estoppel, or issue preclusion, prohibits a party "who had a full and fair opportunity to litigate the issue in the first case but lost" from relitigating the same issue in a new lawsuit to secure a more favorable outcome. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 826; see *id.* at p. 827.) Collateral estoppel applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) "It is well settled that an arbitration award may provide the basis for issue preclusion." (*JPV I L.P. v. Koetting* (2023) 88 Cal.App.5th 172, 192 [citing cases].)

It is uncontested that the arbitration award was a final adjudication and that Selby, the party against whom issue preclusion is sought, was the plaintiff in the arbitration. However, the parties dispute whether the issues dispositive to Selby's claims against Stangl are identical to the issues presented and decided in the arbitration.

A prior proceeding concerns an "identical issue" if " 'identical factual allegations' are at stake . . . , not whether the ultimate issues or dispositions are the same." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) "[T]he factual predicate of the legal issue decided in the prior case must be sufficient to frame the identical legal issue in the current case, even if the current case involves other facts or legal theories that were not specifically raised in the prior case." (*Textron Inc. v. Travelers Casualty & Surety Co.* (2020) 45 Cal.App.5th 733, 747.)

11

## B.    Discussion

The trial court concluded that Selby was precluded from litigating causation as to any causes of action because the arbitrator found she had sufficient information about smoking in the property before the purchase, and because the arbitrator concluded she failed to exercise reasonable care to protect her own interests.  We disagree that these findings were sufficient to collaterally estop Selby from asserting her claims against Stangl in this action.

The arbitration did not concern Stangl's alleged acts or omissions that are at issue in the instant matter.  Stangl was not a party to the arbitration.  The factual background set forth in the written arbitration award focused on the conduct of Selby, Conrad, and LiMandri.  With respect to Stangl, the award mentioned only that he visited the unit once with Selby, that Selby did not ask him for more information about smoking in the unit, and that he arranged for the unit to be professionally cleaned after Selby detected the odor.  Although the award indicated Conrad's expert opined that Stangl breached his duty of care to Selby, the arbitrator noted that Stangl was "not a party to this litigation."  The arbitrator had no reason to adopt or reject the expert's conclusion about Stangl's breach in his analysis.  Whether Stangl's conduct constituted a breach of his fiduciary duties to Selby was not an issue developed or litigated in the arbitration.

Stangl contends the trial court's ruling is nonetheless correct because both LiMandri's duty under section 2079 and Stangl's fiduciary duty required disclosure of the same material

12

facts to Selby.[5]  As such, Stangl argues, the arbitrator's finding that LiMandri satisfied his duty to disclose material information to Selby "necessarily constitutes a conclusive finding that Stangl also obtained and provided Selby with all required information." Stangl's contention finds no support in the law.

Section 2079 provides that a real estate broker who has "a written contract with the seller to find or obtain a buyer[,] or is a broker who acts in cooperation with that broker to find and obtain a buyer," has a duty to "conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective buyer all facts materially affecting the value or desirability of the property that an investigation would reveal . . . ."  (§ 2079, subd. (a).)  The statute was intended to "codify and make precise the holding of" *Easton v. Strassburger* (1984) 152 Cal.App.3d 90, which first imposed this duty on sellers' brokers.  (§ 2079.12, subd. (b); *Easton*, at p. 102.) Section 2079 therefore "codifies a negligence standard of care for one particular task that the law imposes on brokers—the obligation (by a seller's agent) to visually inspect the property and disclose the results of that inspection to the buyer."  (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 763 (*Michel*).)

---

[5]  The arbitrator found LiMandri did not breach his "common law duty" to Selby.  However, on appeal, the parties do not suggest LiMandri owed any common law duty to Selby.  (See *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 643 [noting no authorities establish that a seller's agent has a common law disclosure duty to the buyers in the context of a negligence action].)  Stangl cites only section 2079 as the source of LiMandri's disclosure duty and the basis for the collateral estoppel argument.

"The statutory duties owed by sellers' brokers under section 2079 are separate and independent of the duties owed by brokers to their own clients who are buyers." (*William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1305.)  The common law fiduciary duty "is substantially more extensive than the *nonfiduciary* duty codified in section 2079" and "requires the highest good faith and undivided service and loyalty." (*Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 25 (*Field*); *Michel*, *supra*, 156 Cal.App.4th at p. 762 ["The fiduciary duty is greater than the negligence standard of due care under section 2079."].)

" ' The broker as a fiduciary has a duty to learn the material facts that may affect the principal's decision.  He is hired for his professional knowledge and skill; he is expected to perform the necessary research and investigation in order to know those important matters that will affect the principal's decision, and he has a duty to counsel and advise the principal regarding the propriety and ramifications of the decision.  The agent's duty to disclose material information to the principal includes the duty to disclose reasonably obtainable material information.  [¶] . . . [¶] The facts that a broker must learn, and the advice and counsel required of the broker, depend on the facts of each transaction, the knowledge and the experience of the principal, the questions asked by the principal, and the nature of the property and the terms of sale.  The broker must place himself in the position of the principal and ask himself the type of information required for the principal to make a well-informed decision.  This obligation requires investigation of facts not known to the agent and disclosure of all material facts that might reasonably be discovered.' (2 Miller & Starr, Cal. Real Estate 2d (1989) Agency,

14

§ 3.17, pp. 94, 96–97, 99, fn. omitted.)" (*Field, supra,* 63 Cal.App.4th at pp. 25–26; see also *id*. at pp. 26–27 [fiduciary duty may require more than the visual inspection required by § 2079, subd. (a)].) This duty specifically encompasses the broker's obligation "to discover and disclose certain defects in the property." (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1116.)

Thus, that the arbitrator concluded LiMandri satisfied his duty of disclosure does not categorically mean that Stangl did as well. Stangl's fiduciary duty required him to make reasonable attempts to discover information about material defects on the property and advise Selby accordingly. Selby's FAC alleges that Stangl did not make those efforts—that he did not properly research or investigate the condition of the property, advise Selby to inquire further about the smoking disclosure, or recommend that she proceed with a certified inspection. These questions were not at issue in the arbitration, and the arbitrator did not make any findings as to Stangl. The arbitrator's determinations regarding LiMandri's conduct concerned a duty that was distinct from, and less demanding than, the duty Stangl owed Selby. As a result, those findings did not resolve the issues raised in Selby's FAC.[6] (*Michel, supra,* 156 Cal.App.4th at p. 763.)

---

[6] Stangl cites *Padgett v. Phariss* (1997) 54 Cal.App.4th 1270, in support of his argument that a buyer's agent's fiduciary duty is equal to the standard in section 2079. *Padgett* concluded that the trial court did not err in applying section 2079 to assess an agent's fiduciary duty where the court "properly considered all the relevant factual and legal circumstances in deciding the scope of the fiduciary duty involved." (*Padgett*, at p. 1283.) Stangl does not argue, and the record does not reflect, that the arbitrator

15

Further, the arbitrator's finding that Selby did not exercise reasonable care consistent with section 2079.5 was not a conclusive determination that Stangl's conduct was not a substantial factor in causing her injuries. (See *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1405 [proximate cause is element of breach of fiduciary duty claim]; *US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 909 ["A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage."].) Section 2079.5 states: "Nothing in this article relieves a buyer or prospective buyer of the duty to exercise reasonable care to protect himself or herself, including those facts which are known to or within the diligent attention and observation of the buyer or prospective buyer." The statute applies only to "the buyer or prospective buyer" and only in the context of the statutory scheme in section 2079, et seq., which creates liability for specific agents working for or with the seller, not liability for a fiduciary agent of the buyer.

Although the arbitrator found Selby's failure to follow up on the SPQ, her waiver of the inspection, and her failure to perform a final walkthrough demonstrated she had not exercised reasonable care to protect herself, the arbitrator did not conclude that Selby alone was personally responsible for her failures such

made any findings based on the facts and circumstances in this case limiting the scope of Stangl's fiduciary duty to the standard set forth in section 2079. In fact, the arbitrator appeared to decline to address any issues about Stangl's liability, as he did not address the merits of the expert's opinion that Stangl breached his duty and, instead, noted that Stangl was not a party to the case. We therefore disagree that *Padgett* supports Stangl's collateral estoppel argument.

16

that Stangl was necessarily absolved of any liability. Indeed, the arbitrator's ruling left open the possibility that Selby's lack of diligence could have been attributable to Stangl, as he expressly observed that Selby "*and her agent*" failed to follow up on Conrad's smoking disclosure in the SPQ. The arbitrator was not called upon to allocate responsibility between Selby and Stangl in order to resolve whether Conrad and LiMandri were liable. Thus, nothing in the arbitrator's findings precludes further litigation of the issue of whether Stangl caused Selby's harm.

Stangl also argues that the arbitrator's finding that neither Conrad nor his agent had a duty to provide further disclosures about smoking necessarily means there was nothing Stangl could have done to obtain additional information. We disagree. The arbitrator concluded that Conrad's SPQ response complied with *his* disclosure obligations under the law. This does not mandate the conclusion that other efforts to investigate the history of cigarette smoking in the unit would have been futile. In fact, the arbitrator indicated that Conrad's SPQ response gave Selby "every opportunity to request a detailed explanation or to conduct any further inquiry she felt warranted," suggesting that the arbitrator believed Selby could have obtained additional details if she sought them. The arbitrator's findings did not foreclose Selby's allegation that Stangl breached his fiduciary duty by failing to advise Selby to investigate further, or to do so himself.

Stangl did not argue below or on appeal that Selby's breach of fiduciary duty cause of action was subject to demurrer on any ground other than collateral estoppel.[7] Having concluded that

---

[7] Stangl contends the FAC's claim that he did not inspect the property is a sham allegation because it directly contradicts the

17

collateral estoppel does not apply, we reverse the trial court's order sustaining the demurrer as to the first cause of action.

### C.     Selby's second and third causes of action

Because we will affirm the trial court's ruling if it is correct on any grounds stated in the demurrer (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111), we consider the other arguments Stangl asserted as to Selby's second cause of action for financial elder abuse and third cause of action for tort of another.

### 1.     Financial elder abuse

Financial elder abuse occurs "when any person or entity takes, secretes, appropriates, or retains real or personal property of an elder adult to a wrongful use or with an intent to defraud, or both." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 174; Welf. & Inst. Code, § 15610.30, subd. (a)(1).) "A taking is for a 'wrongful use' when a party 'knew or should have known that [its] conduct is likely to be harmful to the elder . . . adult.' (§ 15610.30, subd. (b).)" (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 478–479 (*Bounds*).) An "elder" includes persons 60 years or older. (Welf. & Inst. Code, § 15750, subd. (b)(2).)

In her second cause of action, Selby alleges that Stangl financially abused her by taking the brokerage fee even though he "knew or should have known" that due to her age—69 years old—and her "declining physical health," she was "especially

---

original complaint's allegation that he inspected the property. However, Stangl does not argue that Selby's breach of fiduciary duty cause of action is insufficiently pled if the purported sham allegation is disregarded. We therefore do not address Stangl's sham pleading contention.

dependent" on Stangl's diligence as her fiduciary, and that his failure to protect her interests was harmful.

Stangl argues the FAC failed to state a cause of action because Selby did not pay the brokerage fee; thus, she has not alleged facts that would demonstrate Stangl took her property. However, "[c]ourts have found in a number of settings that commissions paid by a third party to a defendant arising from an abusive transaction are sufficient to constitute elder abuse." (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 865 [citing cases]; see *ibid.* [commission paid by trust and not plaintiff was property for financial elder abuse claim]; *Zimmer v. Nawabi* (E.D.Cal. 2008) 566 F.Supp.2d 1025, 1034 [mortgage broker's fee obtained due to false statements about refinance made to plaintiff sufficient for financial abuse of elder].) Stangl's commission, even if paid by the seller, may constitute property for purposes of Selby's financial elder abuse cause of action. The allegations were sufficient to withstand demurrer on that element.[8]

---

[8] The FAC does not identify who paid Stangl's commission. A court must evaluate a demurrer based on the allegations on the face of the complaint and matters judicially noticeable. (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132.) Although the trial court took judicial notice that the seller pays the commission in a "normal residential real estate transaction," that fact failed to establish that Conrad paid Stangl's commission in *this* case. Similarly, Stangl's argument that the funds used to pay the commission were never Selby's property because they were loan proceeds that were in escrow (see *Wood v. Jamison* (2008) 167 Cal.App.4th 156, 165), relies on facts not discernible from the face of the complaint and not subject to judicial notice.

19

Further, Selby has alleged facts that, if true, would be sufficient to support a finding that Stangl took the brokerage fee for wrongful use.  By alleging that Stangl "knew or should have known" that she would be particularly dependent on his help, given her condition, that he acted against her interests, and that his deficient performance would cause her harm, she sufficiently alleged that Stangl took the fee for wrongful use.  (*Bounds*, *supra*, 229 Cal.App.4th at pp. 478–479.)  Selby was not required to allege that Stangl took the funds in bad faith or with an intent to defraud.  (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 527–528.)

### 2.    Tort of another

In her third cause of action for tort of another, Selby asserts that she is entitled to recover the attorney fees she incurred in the arbitration against Conrad and LiMandri because Stangl's tortious conduct "forced [her] to protect her interests by prosecuting" the arbitration.

"A party may not recover attorney fees unless expressly authorized by statute or contract."  (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 818, citing Code Civ. Proc., § 1021 ["Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties"].)  Our high court established a common law exception to this rule, holding that "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred."  (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618,

20

620.)  This exception is also found in Code of Civil Procedure section 1021.6, which provides that upon motion, a court may award attorney fees to a party "who prevails on a claim for implied indemnity" if certain conditions are met, including that the party was not at fault in the prior action or had a summary judgment, nonsuit, or directed verdict entered in its favor.  (Code Civ. Proc., § 1021.6.)

Selby asserts that her cause of action is brought under only the common law doctrine.  Stangl does not challenge the third cause of action on that basis, but contends that Selby cannot obtain attorney fees under the common law doctrine of tort of another because she did not prevail in the arbitration.[9]  Yet, existing authority indicates a party is not necessarily required to prevail in a lawsuit with a third party to recover attorney fees under the theory.

*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498 (*Gray*) is instructive.  There, the plaintiff offered to purchase a parcel of land through the defendant brokerage company's real estate agent.  (*Id.* at p. 502.)  Seven months after informing the plaintiff that the sellers had accepted his offer, the agent told the

---

[9]     Some courts consider the statute to have supplanted the common law doctrine of tort of another, while others continue to recognize the common law doctrine.  (Compare *Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310 (*Sooy*) [citing only the common law doctrine of tort of another with no reference to Code Civ. Proc., § 1021.6] with *John Hancock Mutual Life Ins Co. v. Setser* (1996) 42 Cal.App.4th 1524, 1531–1535 [Code Civ. Proc., § 1021.6 governs all claims under tort of another doctrine].)  Because the parties do not dispute the existence of a common law doctrine, we do not consider the issue of whether it has survived the enactment of Code of Civil Procedure section 1021.6.

plaintiff that the sellers had decided not to sell the property. (*Ibid*.) Plaintiff sued the sellers and the brokerage company for specific performance and damages for fraud. (*Ibid*.) The trial court found the agent had falsely represented to the plaintiff that the sellers accepted his offer and the brokerage company, as the agent's employer, had violated its fiduciary duty. (*Ibid*.) The court awarded the plaintiff damages, including attorney fees. (*Ibid*.) It rejected the plaintiff's claims against the sellers because they had never accepted the plaintiff's offer and bore no fault. (*Id*. at p. 503.)

The California Supreme Court affirmed the trial court's attorney fee award to the plaintiff under the tort of another doctrine. (*Gray*, *supra*, 35 Cal.3d at p. 507.) It reasoned: "If [the agent] had not first falsely notified plaintiff that his offer had been accepted and several months later told him that the sellers declined to sell the property, plaintiff would not have incurred attorney fees in seeking to obtain the property in a suit for specific performance against the sellers. Thus, [the agent's] misrepresentation was the direct cause of plaintiff's action for specific performance against the sellers." (*Ibid*.) The court remanded the action for the trial court to determine what proportion of the fee award was attributable to the plaintiff's action against the sellers. (*Id*. at p. 509.)

Thus, in *Gray*, the plaintiff's failure to prevail in his specific performance action against the sellers did not prevent him from recovering the attorney fees he incurred in that lawsuit from the brokerage company. The relevant question was only whether the brokerage company's conduct, through the acts of its agent, caused the plaintiff to pursue specific performance and incur the fees incident to that litigation. Stangl does not

22

distinguish *Gray* or cite other authority to support his contention that Selby's loss in arbitration against Conrad and LiMandri bars her from recovering the fees from Stangl under a tort of another theory.

Stangl also contends Selby has failed to establish that tort of another may be pled as a separate cause of action. The common law line of authority characterizes the "tort of another" as "an application of the usual measure of tort damages. The theory of recovery is that the attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Sooy*, *supra*, 220 Cal.App.3d at p. 1310.) The " 'third party tort exception' to the rule that parties bear their own attorney fees is not really an 'exception' at all but an application of the usual measure of tort damages." (*Ibid.*)

Although Selby's FAC styles tort of another as a cause of action, her opening brief describes her request for fees as "part of her claim for tort damages," and she does not contend in her reply brief that tort of another constitutes an independent cause of action.

We agree that Selby's invocation of "tort of another" damages as an independent cause of action rendered the third cause of action subject to demurrer. However, we also conclude that Selby has sufficiently pled tort of another as a theory of damages. The FAC states that Stangl's "tortious actions" forced Selby to "protect her interests" by initiating the arbitration against Conrad and LiMandri. This adequately alleges that her request for attorney fees under the tort of another doctrine is derivative of her other causes of action. We therefore affirm the trial court's ruling sustaining the demurrer as to the third cause

23

of action as an independent basis for relief, but we hold that Selby has adequately alleged "tort of another" as a theory of damages in connection with her other claims.

## DISPOSITION

The trial court's ruling sustaining Stangl's demurrer is affirmed in part and reversed in part. On remand, the trial court is directed to vacate its order dismissing the action and issue a new order overruling the demurrer as to Selby's first cause of action for breach of fiduciary duty and second cause of action for financial elder abuse. We affirm the trial court's order sustaining the demurrer as to the third cause of action for tort of another, without prejudice to Selby seeking to recover attorney fees as damages under that theory in connection with her tort claims. Selby to recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

24